UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED

NORTHERN DISTRICT OF TEXAS

APR 1 5 2009

CLERK, U.S. DISTRICT COURT

By _____
Deputy

RONALD C. PEARSON,
    Plaintiff,

v.

Eric Holder, United States
Attorney General;
Jane J. Boyle, U.S. Attorney
for the Northern District of
Texas;
Greg Abbott, Attorney General
for the State of Texas;
Lupe Valdez, Sheriff for
Dallas County, Texas;
Mitch Bates, Garland
Chief of Police,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

42 U.S.C. § 1983 Complaint
For Declaratory and
Injunctive Relief

3-09CV0682-0

JURY TRIAL DEMANDED

---

Complaint

    Comes now Plaintiff and files this complaint for injunction
and declaratory relief.  This is an action under 42 U.S.C. § 1983
to address the unconstitutionality of the registration provisions
of SORNA (Sex Offenders Registrations and Notification Act) as an
unlawful exercise of federal power and the unconstitutionality of

Texas' sex offender registration laws both facially and as
applied.   Plaintiff requests that the District Court declare both
SORNA and the Texas registration statutes to be in violation of
both the U.S. and Texas Constitutions and permanently enjoin
all defendants from enforcing those laws.

## Nature of the Action

     As alleged with greater particularity below, Plaintiff
alleges that provisions of SORNA and the Texas Sex Offender
Registration Statutes are unconstitutionally vague in violation
of the Due Process protections of the U.S. and Texas
constitutions and amount to retroactive punishment, in violation
of the Ex Post Facto clause of the U.S. Constitution and the
retroactivity clause Article I § 16 of the Texas Constitution.
Plaintiff also alleges that the federal and state Sex Offender
laws further violate the Due Process, Substantive Due Process,
Equal Protection, Double Jeopardy, Contracts, and Takings clauses
of the U.S. and Texas Constitutions (Article I, §§ 16 and 17).

     Plaintiff also alleges that SORNA and the Texas Sex
Offender statutes violate his right to acquire, possess and
protect property; his rights to see and obtain safety and
happiness; his right to travel, life and liberty; and his rights
to freedom of association and religion protected by the First
Amendment and Due Process Clause of the U.S. Constitution, as
well as Article I, §§ 3a, 6, 8, 14, 16, 17, and 19 of the Texas
Constitution.

Additionally, Plaintiff alleges that these Sex Offender Laws constitute cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and Article I § 13 of the Texas Constitution.

Finally, Plaintiff alleges that SORNA and Texas Sex Offender Laws violate the Distribution of Powers doctrine of the Texas Constitution (Texas Const., Art. III). Plaintiff is challenging SORNA and the Texas Sex Offender Registration Law.

## I.

## Jurisdiction

1)   This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims. This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

2)   Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391. Plaintiff maintains permanent residence in Garland, Texas.

## II.

## Parties

3)   Plaintiff, a resident of Garland, Texas was convicted

of a sexual offense in 2007.  He has been informed that he is
required to register as a sex offender as a condition of his
federal supervised release.

4)  Defendant Eric Holder is Attorney General of the United
States and is sued in his official capacity.

5)  Holder's inclusion in this suit stems from his official
obligation to defend the constitutionality of SORNA.

6)  Defendant Jane J. Boyle is the U.S. Attorney for the Northern
District of Texas and is sued in his/her official capacity.

7)  Defendant Greg Abbott is the Attorney General of the State
of Texas and is sued in his official capacity.

8)  Defendant Lupe Valdez is the Dallas County Sheriff and is
sued in her oficial capacity.

9)  Defendant Mitch Bates is the Garland Chief of Police and
is sued in his official capacity.


III.

Standing


10)  Plaintiff is directly affected by SORNA and the Texas Sex
Offender laws and their unconstitutional enforcement.  These
federal and state statutes have directly caused a violation of
Plaintiff's rights under both the U.S. and Texas Constitutions.
Thus, the requirements for Article III standing have been met.

IV.

General Allegations

A.

Brief Overview of the Adam Walsh Act, P.L. 109-248

(July 27, 2006) and SORNA

11)  On July 27, 2006, President George W. Bush signed the Adam Walsh Child Protection Act of 2006, H.R. 4472, 109th Cong. (2d Sess. 2006) (the Act) into law.  Title I of the Act, entitled the Sex Offender Registration and Notification Act (SORNA), creates a federally-mandated, national sex offender registry law.  See 42 USC §§ 16901-16962.  SORNA requires, inter alia, individuals who are "sex offenders" to register and maintain current information in each jurisdiction: (a) where the sex offender was convicted, (b) where the sex offender resides, (c) where the sex offender is employed and where the sex offender attends school, and (d) requires that the individual register prior to his release from prison, or no later than three (3) business days after any change in residence, employment or student status.  See 42 USC §§ 16911(1), 16913(a)-(c).  SORNA further requires that every state establish an internet website, publishing information about sex offenders registered in their registry.  See 42 USC § 16918.

12)  SORNA also establishes a "National Sex Offender Public Website" to be maintained by the Attorney General, which shall include "relevant information for each sex offender and other

person listed on a jurisdiction's website," and make "relevant information" publicly accessible. See 42 USC § 16920. It also requires that each jurisdiction include in the design of its own website all field search capabilities needed for full participation in the National Sex Offender Public Website and "shall participate in that website as provided by the Attorney General." 42 USC § 16918.

13) SORNA further establishes a three-tier classifications system for sex offenders. See generally 42 USC § 16911. Tier I sex offenders are, among myriad other factors, those whose offense is punishable by one year or less imprisonment or whose offense was an assault against an adult that involves sexual contact but not a completed sexual act. (n.1) See 42 USC § 16911(2). Tier II sex offenders are, again among myriad other factors, are those individuals whose offense is punishable by more than one year imprisonment and committed that offense against a minor. See 42 USC § 16911(3). Tier III classifications, the most severe of the classification tiers, include individuals whose offense is punishable by imprisonment of more than one year and involve, inter alia, aggravated sexual abuse of an adult or minor and occurred after that individual became a Tier II sex offender. See 42 USC § 16911(4). Congress did not provide a procedural mechanism for challenging a tier classification.

footnote:

(n.1) Tier I offenders are required to register for 15 years from the date of their release from incarceration. 42 USC § 16913(b); 42 USC 16916(a). However, the time for registration can be reduced to ten years if the person maintains a clear record. 42 USC § 16916(b).

14)  Lastly, and perhaps most applicable to facts and circumstances of this case, the Act further creates new federal crimes for those individuals who, among other things, are required to register under SORNA but nonetheless fail to do so.  See 18 USC § 2250 (entitled "Failure to Register").

15)  Interestingly, Congress delegated to the Attorney General the authority "to specify the applicability" of SORNA to "sex offenders" who are "convicted **before**" July 27, 2006, as well as those who are "convicted before ... its implementation in a particular jurisdiction."  42 USC §§ 16912(b), 16913(b), 16913(d), 16917(a)-(b) (emphasis supplied).  As such, Congress explicitly did not decide whether SORNA would apply retroactively to persons who were convicted before July 27, 2006, but instead authorized the Attorney General to make that crucial decision.  See 42 USC § 16913(d).


B.

## The Elements of the 18 USC § 2250(a) Offense


16)  The Act amended Title 18 of the criminal code, creating the new federal criminal offense of "failure to register."  See 18 USC § 2250.  That new criminal offense provides the following in relevant part:

(a)  In general.--Whoever--

(1)  is required to register under the Sex Offender Registration and Notification Act; [and]

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian Tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 USC § 2250(a).

17) Subsection (a) of the statute provides a statutory maximum of 10-years' imprisonment for anyone convicted of failure to register. See 18 USC § 2250(a)(B)(3). If the individual charged with failure to register "commits a crime of violence," then that individual has a mandatory minimum sentence of five years' imprisonment, which "shall be in addition and consecutive to the punishment provided for the violation in subsection (a)." 18 USC § 2250(c)(1).

18) Stated simply, the Act specifies that it is a crime for an individual (1) who is required to register under SORNA (such as an individual with a prior sexual offense - as defined by SORNA), (2) travels in interstate commerce to a different state to reside or work, and (3) then subsequently fails to register as a sex offender in that state. See 18 USC § 2250(a).

C.

## SORNA's Registration Requirements, as well as
## 18 USC § 2250, Are Unconstitutional

19)  Both the registration components of SORNA, as well as the new offense of "failure to register" set forth in 18 USC § 2250, are unconstitutional for myriad reasons.  The Act violates the following and other provisions of the United States Constitution: (1) the Commerce Clause, Art. I, § 8; (2) Ex Post Facto Clause, Art. I, § 9; (3) Due Process Clause (both procedural and substantive) of the Fifth Amendment; (4) the Non-Delegation Doctrine, Art. I, § 1; and (5) the Tenth Amendment.

1.

## Congress Impermissibly Delegated to the Attorney General the Decision of Whether SORNA Would Apply Retroactively to Persons Convicted Prior to the July 27, 2006 Enactment of the Act.

20)  As an initial matter, Plaintiff asserts that Congress impermissibly delegated the crucial decision of whether the Act should be applied retroactively.  See 42 USC § 16913(d).  Retroactive laws are highly disfavored because, among other things, they fail to give individuals proper notice and upset settled expectations. See, e.g., Landgraf v USI Film Products, 511 US 244, 265, 114 S.Ct. 1483, 1497 (1994).  The Supreme Court has made clear that "Congress is manifestly not permitted to abdicate or to transfer to others

the essential legislative function with which it is [constitutionally] vested." See Panama Refining Co. v Ryan, 293 US 388, 421, 55 S.Ct. 241, 248 (1935).   Instead, the Ryan Court made clear that Congress may only leave to "selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply." 293 US at 421, 55 S.Ct. at 248 (holding that Congress had unconstitutionally delegated the Executive Branch the authority to prohibit transportation of excess petroleum, which would be subject to fine or imprisonment); see ALA Schechter Poultry Corp. v US, 295 US 495, 550, 55 S.Ct. 837, 852 (1935) (holding that Congress had unconstitutionally authorized the Executive Branch to prescribe codes of fair competition, the violation of which would be a misdemeanor offense).

21)  Plaintiff asserts that this is exactly what Congress did in the Act.   It placed the crucial prosecutorial decision (i.e., whether or not to retroactively expose individuals to criminal liability) in the hands of the Executive Branch via the Attorney General.

22)  For the reasons stated, Plaintiff argues that Congress' delegation to the Attorney General of the important decision of whether the Act applies retroactively was an impermissible delegation of constitutionally-prescribed, legislature authority. See Panama Refining Co., 295 US at 550, 55 S.Ct. at 852; ALA Schechter Poultry Corp., 294 US at 550, 55 S.Ct. at 852.

2.

### Congress Lacks the Power to Force Individuals Convicted of Sex Offenses Which Do Not Affect or Burden Interstate Commerce to Register as Sex Offenders - SORNA Violates the Commerce Clause

23)  Section 2250 is unconstitutional on its face and as applied to Plaintiff, as it violates the Commerce Clause.  In order to violate 18 USC § 2250, a defendant must first be "required to register under the [SORNA]."  18 USC § 2250(a)(1).  However, Congress lacks the authority to direct individuals convicted of offenses which do not affect or burden interstate commerce to register as state sex offenders.  Therefore, Congress could not constitutionally require Plaintiff, who was convicted of an offense which did not affect or burden interstate commerce, to register under SORNA.  Thus, the first element of SORNA cannot be met.

24)  SORNA creates affirmative requirements for "sex offenders" to register with their local jurisdiction.  42 USC §§ 16913-16916. As described above, SORNA's definition of "sex offender" includes citizens who have been convicted under federal and state criminal laws, even if their offense has no relation to interstate activity or commerce.  42 USC § 26911.  The Registration Requirements are not directed to the states, but to individuals.  For example, 42 USC § 16913(a) requires a sex offender to "register and keep the registration current, in each jurisdiction where the offender resides."

-11-

25) Congress may only enact legislation pursuant to the powers specifically delegated to it by the Constitution. US v Lopez, 514 US 549, 552 (1995).  SORNA does not itself explain under what authority Congress imposes the Registration Requirements, but the only power through which Congress could conceivably enact them is its power "[t]o regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." US Const. Art. I § 8, cl. 3.  However, under modern Commerce Clause jurisprudence, as articulated in Lopez, 524 US 549 (1995), US v Morrison, 529 US 598 (2000), and US v Jones, 529 US 848 (2000) it is clear that Congress does not have the power to impose Registration Requirements on individual citizens convicted of purely intrastate offenses. Plaintiff's conviction was such intrastate activity or at least his activities did not affect or burden interstate commerce.

26) As the Court articulated in Morrison, "modern Commerce Clause jurisprudence has 'identified three broad categories of activity that Congress may regulate under its commerce power.'"  529 US at 608-09 (quoting Lopez, 514 US at 558).  First, Congress may regulate the use of and channels of interstate commerce, such as interstate highways, the mail or air traffic routes.  Id.  Second, Congress can regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce. Id.  Finally, Congress can regulate those activities that have a substantial effect on interstate commerce.  Id.

27) The Registration Requirements have nothing to do with the channels of interstate commerce.  hence, the Registration

Requirements cannot be supported by Congress' power to regulate
them.  Further, the Registration Requirements are imposed on
individuals who are not in interstate commerce or have any
connection to interstate commerce.  Thus, the second Lopez
category, protecting the instrumentalities of, or things in
interstate commerce, cannot apply.  The Registration Requirements
can therefore only be upheld if they regulate "those activities
that substantially affect interstate commerce." Lopez, 514 US
at 558-59.  In Lopez and Morrison, the Court set forth several
factors that indicate whether a regulation can be upheld as an
activity that substantially affects interstate commerce.  As an
initial matter, it is relevant whether the activity regulated has
an economic character.  Morrison, 529 US at 611 ("Lopez's review
of Commerce Clause law demonstrates that in those cases where
we have sustained federal regulation of interstate activity based
upon the activity's substantial effects on interstate commerce,
the activity in question has been some sort of economic endeavor").
In Lopez, the Gun-Free School Zones Act was struck down in large
part because "neither the actors nor their conduct ha[d] a
commercial character, and neither the purposes nor the design of
the statute ha[d] an evident commercial nexus."  210 US at 559-60.
Similarly, the Registration Requirements have no commercial
character, or any relation to economic activity of any kind.  The
stated purpose of SORNA is "to protect the public from sex offenders
and offenders against children." 42 USC § 16901.  These purposes
have no economic character.

28)  The second factor examined in Lopez and Morrison is whether
the statute contained a "jurisdictional element" such as a
requirement of travel across state lines for the purposes of
committing the regulated act.  Morrison, 529 US at 611-612.
Although SORNA's criminal provision requires a sex offender to
"travel in interstate commerce" in order to qualify him for
federal prosecution, the Registration Requirements contain no
such jurisdictional elemnt.  42 USC §§ 16913-16916.  The
Registration Requirements apply to citizens whose criminal
activities are purely intrastate, and who never travel in
interstate commerce.

29)  The statute does not, however, require that the sex offender
travel in interstate commerce in furtherance of a crime that
affects interstate commerce.  See Id.  Thus, it is evident that
the statute requires no jurisdiction nexus between interstate
travel and any crime or any effect on commerce.  On its face and
as applied to Plaintiff, therefore, there is an insufficient nexus
between Plaintiff (or anyone for that matter) traveling from New
York to Florida, and how that travel affected interstate commerce.
Because the statute fails to require that the individual traveled
in interstate commerce with intent to commit a specified crime,
it does not meet the requisite jurisdictional nexus to affect
commerce.  As such, the law is unconstitutional on its face and
as applied to Plaintiff.

30)  Finally, under Morrison, courts must examine the extent of
the relationship between the regulated activity and its effects

on commerce.  529 US at 612.  There is no indication in the statute,
or anywhere else, that the activities sought to be regulated by
SORNA have any effect on commerce at all, not even an attenuated
one.  Nor can such an effect be hypothesized by the aggregate
economic effects that sex crimes and sex offenders inflict upon
society.  The Supreme Court has flatly rejected the notion that
the aggregate effect on interstate commerce of local criminal
activity can be used to justify the invocation of Congress'
Commerce Clause power.  Morrison, 529 US at 617.  Nor can the
costs of crime control or the effects of crime on "national
productivity" support the use of the Commerce Clause to regulate
intrastate criminal activity.  Lopez, 514 US at 564; Morrison,
529 US at 598, 612-13.

31)  Moreover, this analysis is not affected by the Supreme Court's
most revent Commerce Clause case, US v Raich, 545 US 1 (2005).
In Raich, the Court held that the application of Controlled
Substances Act ("CSA") provision criminalizing the distribution
and possession of medical marijuana was legally enacted under the
Commerce Clause, even if marijuana was locally grown, consumed
locally, and never travelled in interstate commerce.  The Court
held that because marijuana is a commodity that has an interstate
market, the CSA is connected to "economic" activity and is therefore
a valid exercise of Congress' Commerce Clause powers:

> [u]nlike those at issue in Lopez and Morrison the activities
> regulated by the CSA are quitessentially economic.
> "Economics" refers to "the production, distribution, and
> consumption of commodities." Webster's Third New International
> Dictionary 720 (1966).  The CSA is a statute that regulates

the production, distribution, and consumption of commodities
for which there is an established, and lucrative, interstate
market.  Prohibiting the intrastate possession or manufacture
of an article of commerce is a rational (and commonly utilized)
means of regulating commerce in that product.

Raich, 545 US at 25-26.

32)  Clearly this reasoning has no application to SORNA, which in
no way regulates anything resembling economic activity.  SORNA,
whose stated purpose is "to protect the public from sex offenders
and offenders against children," 42 USC § 16901, far more closely
resembles the statutes struck down in Lopez and Morrison.

33)  Each of these four factors indicates that the Registration
Requirements are unconstitutional.  First, the regulated activity
has no economic character.  Second, the Registration Requirements
contain no jurisdictional element.  Third, the statute contains
no congressional findings indicating a link with interstate
commerce.  Finally, the regulated activities have an insufficient
effect on interstate commerce to support an exercise of Commerce
Clause power.  For all of these reasons, the Court must hold the
Registration Requirements unconstitutional in this action for
declaratory judgment. (n.2)

(n.2) In Morrison, after applying all of these factors, the Court
ruled that "[g]ender motivated crimes of violence are not, in any
sense of the phrase, economic activity," and struck down the
Violence Against Women Act as an impermissible use of Congress'
power under the Commerce Clause.  529 US at 613.  Similarly, in
Lopez, the Court held that the Gun Free School Zones Act, "is a
criminal statute that by its terms has nothing to do with 'commerce'
or any sort of economic enterprise, however broadly one might define
those terms."  514 US at 561.

34) For the reasons stated above, the Registration Requirements of SORNA are unconstitutional. Because it is necessary for a defendant to be "required to register under the Sex Offender Registration and Notification Act" in order to violate § 2250, and Plaintiff cannot be required to register under SORNA because the Registration Requirements are unconstitutional.

3.

## The Act Violates the Ex Post Facto Clause

35) The crime alleged in the indictment purports to punish persons for acts committed prior to the passage of SORNA, which is a violation of the Ex Post Facto Clause of the Constitution. See US Const., Art. I, § 9.

36) The Ex Post Facto Clause law applies if the legislation's intent was to impose punishment. See Id. Additionally, the Court has stated that if "the intention of the legislature was to enact a regulatory scheme that is civil and non-punitive, [the Court] must further examine whether the statutory scheme is so punitive in purpose or effect as to negate [Congress'] intention to deem it civil." Smith v Doe, 538 US 84, 92, 123 S.Ct. 1140, 1147 (2003). If the reviewing court therefore determines that the legislature had intended to establish civil proceedings, it must then examine whether that challenged statutory scheme is indeed "so punitive in purpose or effect," and the Ex Post Facto Clause applies. Id.

37) The Ex Post Facto Clause also "restricts governmental power

by restraining arbitrary and potentially vindictive legislation."
Weaver v Graham, 450 US 24, 58-59, 101 S.Ct. 960, 964 (1981).  The
genesis of this restriction is the concern that a legislature's
response "to political pressures poses a risk that they may be
tempted to use retroactive legislation as a means of retribution
against unpopular groups or individuals." Landgraf, 511 US at
266, 114 S.Ct. at 1497.  It cannot be disputed that political
pressure has made sex offenders a very unpopular group in our
country.  (n.3)

38)  Plaintiff contends that the Act is criminal and punitive in
nature.  Alternately, even if the Act is civil and non-punitive,
Plaintiff asserts that the statutory scheme of the Act was "so
punitive in purpose or effect as to negate [Congress'] intention
to deem it civil." Smith, 538 US at 92, 123 S.Ct. at 1147.

39)  SORNA was intended by Congress to be punitive in nature.  See
Smith, 538 US at 93-96, 123 S.Ct. at 1147-49.  For example, the
Act: (1) broadens the class of offenders subject to registration,
see 42 USC § 16911; (2) lengthens the duration of registration,
see 42 USC § 16915; (3) creates classes of offenders, see 42 USC
§ 16911; (4) reduces the time frame for the affected individual
to advise officials of any changes to his registration information,
see 42 USC § 16913; and (5) increases the penalties for violating

(n.3) See generally Shiela T. Caplis, Got Rights? Not if You're a
Sex Offender in the Seventh Circuit, 2 Seventh Cir. Rev. 115 (2006)
(describing the convicted sex offender as "perhaps the most despised
and unsympathetic member of American society").

any of its registration requirements, see 42 USC § 2250. (n.4)

40)  Furthermore, Congress' stated purpose of SORNA was to "protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below." Compare Pub. L. 109-248, § 102 with <u>Smith</u>, 538 US at 93, 123 S.Ct. at 1147. Congress stated this purpose without finding that sex offenders indeed have a high risk of recidivism or that public notification would promote public safety.

41)  The <u>Wahburn Law Journal</u>, Vol. 47, p. 490 opines that SORNA's stringent requirements are punitive rather than rehabilitative. Other than sex offenders, no offenders in the criminal justice system face national lifetime registries. (n.5)

(n.4) Interestingly, prior to the passage of the Act, it was only a misdemeanor for an individual to fail to register as a sex offender.  Compare 42 USC § 14072(i) with 18 USC § 2250 (making failure to register a felony punishable by up to ten years in prison). Congress has repealed this misdemeanor provision.  See P.L. 109-248, Title I, § 129.

(n.5) Bureau of Justice Statistics: Criminal Record Systems Statistics, http://www.ojp.usdoj.gov/bjs/crs.htm (last visited Jan. 26, 2008).

42)   For these reasons, the SORNA requirements are overlong in duration and overbroad in scope. (n.6)  They call for former offenders to register when these offenders do not have a risk of future dangerousness. (n.7)  Furthermore, while the SORNA requirements apply to all convicted sex offenders without regard to their threat to public safety, the requirements are also limitless as to the public's access to the offender's information. (n.8).  Public notification without any sort of risk assessment or treatment of the offenders hinders rather than advances public safety.

(n.6) Human Rights Watch, No Easy Answers: Sex Offender Laws in the U.S. 12 (2007), available at http://hrw.org/reports/2007/us0907/ us0907web.pdf.  No Easy Answers is the first comprehensive study in the United States regarding sex offender policies, their impact on public safety, and their effect on former offenders.  Human Rights Watch, Sex Offender Laws May Do More Harm Than Good (2007) available at http://hrw.org/english/docs/2007/09/06/usdom161819.htm. The Human Rights Watch release the 146-page report on September 12, 2007.  Human Rights Watch, No Easy Answers: Sex Offender Laws in the U.S., supra note 1, at 3. "[The] length of time during which a former offender must register and be included in online registries is set arbitrarily, based on the nature of the crime of conviction and not on any assessment of the likelihood that the former offender continues to pose a safety threat." Id. at 5.

(n.7) Id. at 3.

(n.8) Memorandum from Amy Baron-Evans & Sara Noonan on The Adam Walsh Child Protection and Safety Act of 2006 at 11, 17 (Nov. 20, 2006), available at http://www.fd.org/pdf_lib/adam%20walsh%20part %20ii.pdf; Baron-Evans & Noonan, note 12, at 41.

43) False statistics on sex offender recidivism has prompted both politicians and society to believe that more stringent sex offender requirements are necessary to ensure the protection of our society. (n.9)  To gain support for proposed sex offender laws, politicians often cite offender recidivism rates that are as high as eighty to ninety percent. (n.10)  Evidence actually shows, however, that recidivism rates for sex offenders are only around twenty-five percent. (n.11)  In fact, some studies show that as many as ninety-five percent of all new sex offense are committed by individuals not required to be on any type of registry. (n.12).  Ninety percent of sex offenses against children

---

(n.9) <u>Human Rights Watch, No Easy Answers: Sex Offender Laws in the U.S.,</u> supra note 1, at 4.

(n.10) Id.

(n.11) Id.

(n.12) Posting of Linda4Justice to Life & Times Blog, http://www.kcet.org/lifeandtimes/blog/index.php?p=219&kcet_speed=lo&kcet_play=1 (Oct. 16, 2007, 05:44 EST). Sex offenders represent ten to thirty percent of states' prison populations.  Bumby, Talbot, & Carter, supra note 147, at 2. From 1980 to 1994, convicted sex offenders in prisons increased more than 300%, far outpacing the expansion of the prison population generally. Id. Between 10,000-20,000 sex offenders leave prisons each year. Id. These sex offenders, on average, have served three to five years in prison - nearly twice as much time as those prisoners convicted of non-sex offenses. Id. These large numbers alone create challenges with the sex offender population re-entering society upon serving prison sentences. Id.
    Within three years from their release, law enforcement officials re-arrested almost half of the sex offenders for new crimes and over one-third returned to prison. Id. Specifically, over one-third of those new arrests occurred within six months of the sex offender's release, and well over half of the new arrests occurred during the first year. Id. <u>Courts convicted only 3.5% of those sex offenders returning to prison for another sex crime.</u> Id. The majority (71%) returned to prison for technical violations of release conditions and most of the remainder (23.9%) returned to prison to serve sentences for non-sex offenses. Id.

are by family members or acquaintances. (n.13).   The sexual
abuse of a child by a stranger previously convicted of a sex
offense, therefore, is a rare event. (n.14).

44)   Non-registered individuals commit ninety-five percent of
all sex offenses. (n.15).   Registration requirements, therefore,
have the potential to prevent only a very small fraction of
future sex offenses. (n.16)

45)   Community notification allows any individual, corporation,
or organization access to sex offender registration information.
(n.17).   In many cases, activists discover offenders' addresses

(n.13) Human Rights Watch, No Easy Answers: Sex Offender Laws in
the U.S., supra note 1, at 4; see supra note 120.

(n.14) Human Rights Watch, No Easy Answers: Sex Offender Laws in
the U.S., supra note 1, ate 4.

(n.15) See Posting of Linda4Justice, supra note 169.

(n.16) See Id. Furthermore, residency restrictions hinder law
enforcement supervision of former offenders.   See Catherine
Saillant, Sex Offender is Free -- And Reduced to a Riverbed, L.A.
Times, Sept. 8, 2007, available at http://www.latimes.com/news/
local/la-me-mental9,0,3896403.story?coll=la-home-local. Residency
restrictions exclude former offenders from living in entire
communities and force them to live far away from their families,
jobs, treatment, and other supportive networks.   See Id.
    Residency restrictions force the offenders to move far away
to rural areas, become homeless, or fail to register and continue
living in the community. Baron-Evans & Noonan, supra note 12, at
40. Even if the offenders continue to register, law enforcement
has trouble keeping track of the offenders when they live in such
remote areas. Id. Thus, the "banishment" of offenders through
residency requirements only hinders the ability of law enforcement
to monitor the offenders and keep the public safe. Id.

(n.17) Baron-Evans & Noonan, supra note 12, at 40.

through Internet sex offender registries. (n.18).   Offenders receive threatening mail and phone calls. (n.19).   Even worse, activists burn and vandalize offenders' homes. (n.20).   Some offenders move and fail to update their registry information and vigilantes mistakenly target innocent homeowners because their addresses appear on the registry. (n.21)

46)   Furthermore, readily available personal information about former offenders allows neighbors, colleagues, classmates,

(n.18) See Human Rights Watch, No Easy Answers: Sex Offender Laws in the U.S., supra note 1, at 78-99.

(n.19) Id. Only fourteen states and the District of Columbia have statutes prohibiting the use of sex offender registration information to harass, discriminate, or terrorize convicted offenders: California, Connecticut, Idaho, Hawaii, Kentucky, Massachusetts, Mississippi, New Jersey, New york, Pennsylvania, South Carolina, Utah, Vermont, and Virginia. Id. at 90, 90 n.308.

(n.20) Id. at 7. In 1986, Richard R. molested his step-daughter, a crime for which he served time in a New Jersey prison until 1999. Id. at 86.   Two weeks after his release from prison, notification went out to his community. Id. neighbors threw garbage in his yard, rang his doorbell and ran away, drove by his house and yelled obscenities like, "Stop fucking little girls! I'm going to kill you!" Id. On one occasion, a man with a mask knocked on his door then crouched down.   Richard R. opened the door and the man pointed a gun at him, threatening, "If you don't get out of this neighborhood I'm going to kill you." Id. The man fled, but a few days later, Richard R. moved away from the community. Id.
   William E.'s story is more tragic. Maine required William E. to register as a sex offender for having consensual sex with his fifteen-year-old girlfriend when he was nineteen-years-old, a crime for which he served two years in a state prison. Id. at 91. William E. moved to a trailer out in the woods upon his release from prison. Id. Soon after, a man came to William E.'s doorstep, and when William E. opened the door, the man shot him in the face. Id. at 91-92. The man looked up William E.'s address on the Maine online registry and killed him because he thought he was a pedophile. Id. at 91. William E. was one of two convicted sex offenders on Maine's online registry that the man shot before he killed himself. Id. William E.'s mother spoke to the Human Rights watch about her son: "Without the registry, he would still be alive today ... He was not a violent person, but he was killed because someone thought he was." Id. at 91-92.

(n.21) Baron-Evans & Noonan, supra note 12, at 41.

employers, and others to shun and ostracize the offenders. (n.22).

Offenders cannot find employment and, when they do, employers

fire them when the employers discover their employees are

former offenders. (n.23).   Homelessness and joblessness not only

make the offenders more difficult for law enforcement to

supervise, but also create recidivism and threaten public safety.

(n.24).   The stigma and harassment of former offenders diminish

the likelihood of a successful transition back into society. (n.25).

47)  For these reasons, SORNA's registration and community

notification requirements do not have a rational connection to

(n.22) Saillant, supra note 174 (discussing how "a tangle of sex
offender laws, court orders and public fear can produce unintended
consequences"). Walter D.'s story is a good example of how sex
offender laws can produce unintended consequences. Human Rights
Watch, No Easy Answers: Sex Offender Laws in the U.S., supra note
1, at 80. In 1986, "Walter D. unknowingly solicited an underage
prostitute," a crime for which Walter D. served time in a Washington
state prison until 1992. Id. Walter D. now registers as a sex
offender and his picture appears on Washington's online registry,
and as Walter D. confessed to the Human Rights Watch, "I will never
be given a second chance. It doesn't matter how long I don't
reoffend, I will always be a sex offender in everyone else's eyes."
Id. Specifically, at least four different employers have fired
Walter D. from his job as a computer technician after his colleagues
discovered his profile on Washington's online registry. Id.
Furthermore, most landlords will not rent to him when they find
out he is a registered sex offender, and when Walter D. does find
a place to rent, flyers with his registration information appear
in his new neighborhood within weeks. Id.

(n.23) Baron-Evans & Noonan, supra note 12, at 40.

(n.24) See Richard Roesler, Sex Offenders Without Addresses Throw
Notification Systems for a Loop, Spokesman Review, Sept. 6, 2005,
available at http://www.spokesmanreview.com/tools/story_pf.asp?ID=
88953. An Oregon sheriff spent several months searching for a
landlord to rent to Bruce E., a convicted sex offender. Human Rights
Watch, No Easy Answers: Sex Offender Laws in the U.S., supra note 1
at 95. When the sheriff was unsuccessful, Bruce E. began living in
a tent in a yard behind the jail he just left, homeless and without
a job. Id. at 95-96.

(n.25) Baron-Evans & Noonan, supra note 12, at 40.

the non-punitive purpose of offender rehabilitation and public safety. Thus, the severity of SORNA's requirements unduly burden non-violent sex offenders who are unlikely to recidivate but who are included in registries and community notification information.

48) As further evidence of Congress' punitive intent, it placed the crime for failing to register in Title 18 (a criminal part) of the United States Code. See 18 USC § 2250(a); Smith, 538 US at 92, 123 S.Ct. at 1147. The previous misdemeanor offense for failure to register that was repealed by the Act is set forth in Title 42 of the United States Code, entitled "Public Health and Welfare." See USC § 14072(i).

49) For the foregoing reasons, SORNA violates the Ex Post Facto Clause of the Constitution. See US v Smith, 481 F.Supp.2d 846, 851 (S.D. Mich. 2007); US v Barnes, No. 7 Cr. 187, 2007 WL 2119895, at *5 (S.D. N.Y. July 23, 2007) (rejecting the government's position that "knowledge of the state law requiring registration is equivalent to knowledge of 'SORNA's' requirements"; and noting, "The Constitutional mandate that defendants be given adequate notice and fair warning applies not only to what conduct is criminal but to the punishment which may be imposed.")(unpub.).

50) It is significant to note that the District Court in ACLU v Masto, 2:08-CV-00822-JCM-PAL(D. Nev., Oct. 7, 2008) concluded that state sex offender registration laws were punitive in nature and therefore violated the Ex Post Facto Clause of the US Constitution.

4.

## SORNA Violates Plaintiff's Procedural and Substantive
## Due Process Rights

51)  Plaintiff may not challenge the registration or designation process prior to registering.

52)  SORNA violates the Due Process clause because there is no mechanism to challenge registration or designation.  Plaintiff asserts that, because SORNA neither provides for a reasonable, timely hearing or even a petition process prior to publishing his name on the sex offender internet registries or being compelled to comply with other reporting conditions, SORNA violates both the procedural and substantive components of the Due Process Clause of the Fifth Amendment to the Constitution. (n.26)

53)  SORNA imposes, inter alia, automatic sex offender status, public notification on the Internet, and tier-level risk classifications.  See Pub. L. 109-249, § 637 (requiring the Attorney General to assemble a task force to study the risk-based systems and report back within 18 months).  It imposes such without a hearing to assess risk of recidivism or current dangerousness of the affected individual.

(n.26) SORNA provides for a hearing in only a very narrow set of circumstances.

54)  Plaintiff asserts that the lack of a preregistration meaningful hearing violates his procedural due process rights, as there is no procedural method for Plaintiff to challenge the validity of a prior conviction prior to his name being published on the internet registries (both state and federal registries required under SORNA).

55)  This, in turn, can lead to a violation of his substantive due process rights because he (or any other individual) may be deprived of liberty when his name is listed on the state and federal registries and is compelled to comply with the other reporting/registration portions of the Act, even if he had not actually been convicted on an offense that Congress listed as a qualifying "sex offense" in SORNA. (n.27).

56)  Indeed, the Eleventh Circuit has held that the classification of a prisoner as a sex offender, as well as the requirement that he complete sex offender treatment as a precondition for parole eligibility, implicated a liberty interest under the Due Process Clause.  See Kirby v Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999); see also Coleman v Dretke, 395 F.3d 216, 223-24 (5th Cir. 2005) (holding that Texas statute violated procedural due process rights of an individual who was required to register as a sex offender without first being afforded a hearing); Neal v Shimoda,

(n.27) This may occur, among other avenues, when a prior conviction is overturned or expunged, or the person is pardoned.  There is no avenue in SORNA to challenge the publication of an individual's name on the registry.

131 F.3d 818, 831 (9th Cir. 1997) (holding that a state must
provide a hearing before classifying a prisoner as a sex offender
and requiring the prisoner to complete a treatment program as a
condition to parole eligibility). Accordingly, for the above
reasons, Plaintiff's prosecution for failure to register would
violate his right to due process of law, as well as the Ex Post
Facto Clause.

5.

The Attorney General's Regulation Retroactively Applying

SORNA Violates the Administrative Procedures Act

57) The Attorney General's Regulation, 28 CFR § 72.3, which
purportedly applies SORNA retroactively, violated the Administrative
Procedures Act (APA), codified at 5 USC § 553, because it was
promulgated absent a 30-day notice and comment period. As discussed
above, on February 28, 2007, the Attorney General issued a
regulation retroactively applying SORNA to all persons convicted
of a sex offense prior to July 27, 2006 -- the date Congress
enacted SORNA. See 28 CFR § 72.3.

58) The APA requires agencies to publish a proposed rule in the
Federal Register and give interested parties the opportunity to
submit comments and other relevant material before the rule becomes
effective. 5 USC § 553(d). Generally, a substantive rule must
be published in the Federal Register at least 30 days before it
becomes effective. See Id. However, the APA permits agencies

to enact rules without a notice and comment period for "good cause" where it is "impractical, unnecessary, or contrary to the public interest." 5 USC § 553(b). The "'good cause' exception is to be narrowly construed and only reluctantly countenanced.' The exception is not an 'escape clause'; its use 'should be limited to emergency situations.'" <u>Utility Solid Waste Activities Group v Environmental Protection Agency</u>, 236 F.3d 749, 754 (D.C. Cir. 2001) (omitting citations and quotations).

59) The Attorney General erroneously relied upon the "good cause" exception in foregoing the public notice and comment period. The Attorney General claimed that notice and comment was "impractical, unnecessary, and contrary to the public interest." 72 Fed. Reg. at 8896. In support of his assertion, the Attorney General stated that the "immediate effectiveness of the rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements." Id. Moreover, the Attorney General explained that "[d]elay in the implementation of [the] rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders through prosecution and the imposition of criminal sanctions." Id. However, these assertions have no basis even when evaluated against the Attorney General's own manual interpreting the "good cause" exception under the APA.

60) According to the Attorney General's Manual, a 30-day public notice and comment period is "impracticable" under the APA when "an agency finds that due and timely execution of its functions

would be impeded by the notice otherwise required in [§ 553]."

Utility Solid Waste Activities Group, 236 F.3d at 754 (citing Attorney General's Manual on the Administrative Procedures Act, at 30-31(1947)).  In passing the rule, the Attorney General makes little more than a bare recitation that delay would impede the protection of the public.

61)  Finally, the notice and comment period was not "unnecessary." The Attorney General's Manual explains that this term refers to "the issuance of a minor rule in which the public is not particularly interested." Id. (citing Attorney's Manual at 31); see also South Carolina v Block, 558 F.Supp. 1004, 1016 (D.S.C. 1983) (finding that the "unnecessary" exception is "confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public.").  Certainly, an all-encompassing rule that purported to make SORNA retroactive to all offenders who ever committed a sex offense fails to meet this definition of "unnecessary."

62)  For all of these reasons, the Attorney General had no "good cause" to excuse the APA's notice and comment period.  Thus, the rule should be invalidated. See Nat'l Org of Veterans' Advocates, Inc v Sec'y of Veterans Affairs, 260 F.3d 1365, 1375 (Fed. Cir. 2001) ("Failure to allow notice and comment, where required, is grounds for invalidating the rule.")(citing Auer v Robbins, 519 US 452, 459 (1997)).

6.

## SORNA and the Texas Sex Offender Registration Laws
## Impermissibly Encroach Upon State Power and Therefore
## Violate the Tenth Amendment

63)  The Registration Requirements, which impose a federal obligation on offenders to register in individual state-created and state-run sex offense registries, are an unconstitutional encroachment of federal power on Texas state sovereignty.  The Registration Requirements therefore violate the Tenth Amendment and are invalid. As described above, in order to violate § 2250, a defendant must first be required to register under SORNA.  Since the Registration Requirements are unconstitutional, Plaintiff cannot be required to register under SORNA.

64)  The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." US Const., Amend. X.  The Tenth Amendment has been applied to uphold the principles of federalism by limiting the power of federalism by limiting the power the federal government may exercise over state activities.  For example, the Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering federal law. Printz v US, 521 US 898, 935 (1997).  Although SORNA offers the states financial incentives to create SORNA-compliant registries, 42 USC § 16925, few states have yet created such registries.

However, the federal Registration Requirements, which require individual sex offenders to register in their state of residence, are currently in effect.  42 USC §§ 16913-26; 72 FR 8894, 8895, 2007 WL 594891 (2007).  The Registration Requirements, therefore, force the Texas state officials who run the local registries to accept federally required sex offender registrations before their state chooses to adopt the SORNA provisions voluntarily.

65)  In Printz, the Supreme Court struck down a law requiring local law enforcement officials to conduct background checks of prospective handgun purchasers.  The Court held, "[t]he Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." 521 US at 935; see also New York v US, 505 US 144 (1992) (Congress did not have the power to compel the states to enact a federal program regulating the disposal of toxic waste).  The local law enforcement officials in Printz are analogous to the law enforcement officials who run state sex offender registries.  Just as Congress has no power to compel local law enforcement to conduct federally mandated background checks, it has no power to compel local law enforcement to accept registrations from federally mandated sex offender programs.  See also US v Snyder, 852 F.2d 471, 475 (9th Cir. 1988) ("the federal government has no constitutional authority to interfere with a state's exercise of its police power except to the extent the state's action intrudes on any of the spheres in which the

-32-

federal government itself enjoys the power to regulate").
SORNA's registration requirements are therefore invalid under
the Tenth Amendment and a ruling in declaratory judgment should
issue.

7.

### The Effects on Plaintiff

66) Plaintiff accepted a plea agreement and plead guilty to
a federal sex offense. Plaintiff is required to register as a
sex offender. Plaintiff is extremely worried that he will be
subjected to harrassment and embarrassment upon community
notification of his sex offender status. he never would have
accepted the plea deal if he knew what the State of Texas would
subject him to.

67) Plaintiff fears for his safety once notification is
implemented.

68) Plaintiff fears that his ability to find employment may be
compromised if his potential emloyers are notified or notification
procedures are implemented.

69) Plaintiff believes that posting of his photograph and name
and other information on neighborhood fliers and on any community
notification website will result in his being singled out for
scorn and ridicule and perhaps threats of violence or destruction
of property.

70) Plaintiff is worried he will not be able to find suitable

long-term housing as most residential housing is located near
a park or bus stop where children frequent.

71)  Plaintiff has suffered great stress and anxiety at the
prosepect of complying with SORNA and the Texas State registration
statutes and fears huge financial losses stemming from denial of
potential employment as a result of potential public access of
internet registration posting.  Once posted, internet cache
servers will retain past information for an indeterminate period
of time whether names are removed or not.  Prohibition of initial
publication is the only recourse to prevent such events.

72)  Plaintiff fears that he will suffer harm in the form of
a) loss of or inability to obtain employment, b) community
backlash, c) individual and random acts of violence, d) inability
to secure lawful housing, e) and inability to attend religious
functions if SORNA and the Texas Sex Offender laws as to
registration, community notification, and movement/residency/
public access reduction laws are allowed to stand.

V.

First Cause of Action

Violation of the Fourteenth Amendment to the
United States Constitution under 42 U.S.C. § 1983
(Due Process)

73)  Plaintiff incorporates by reference each and every
allegation contained in the preceding paragraphs as set forth
fully herein.

74)  Pursuant to 42 U.S.C. § 1983, this claim is brought by

Plaintiff against all Federal and State Defendants in their official capacities.

75)  The SORNA and Texas Sex Offender Laws are vague and ambiguous and fail to sufficiently define who is subject to the laws, what their effects are, and what the penalties for failure to comply with them are, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

76)  SORNA and Texas Sex Offender laws also violate the Due Process Clause because they reassess offenders and subject them to new restrictions and requirements, regardless of any actual risk to society and without the reasonable possibility of any hearing and without any requirement by the State of Texas to provide offenders with any actual notice of their classification or any new prohibitions or requirements.

77)  Further, the SORNA and Texas Sex Offender Laws violate the Due Process Clause of the U.S. Constitution because they fail to rationally further any legitimate governmental purpose.

78)  Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.


VI.

Second Cause of Action

Violation of the First Amendment to the

United States Constitution under 42 U.S.C. § 1983

(Free Exercise of Religion)

79)  Plaintiff incorporates by reference each and every

allegation contained in the preceding paragraphs as set forth fully herein.

80)  Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff against all Federal and State Defendants in their official capacities.

81)  Because churches and other places of worship fall within the places certain sex offenders may not "knowingly be" in the proximity of (where children are present) under the Texas Sex Offenders statutes, regardless of the actual known risk of such offenders, the Texas Sex Offender laws improperly interfere with offenders' rights to practice religion without undue governmental iterference.

82)  The Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.


VII.

Third Cause of Action

Violation of the Fourteenth Amendment to the
United States Constitution under 42 U.S.C. § 1983
(Substantive Due Process)

83)  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

84)  Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff against all Federal and State Defendants in their official capacities.

85) By impacting on Plaintiff's ability to travel throughout Texas, attend church or other religious services, go to Court or attorney offices, parent children, and live with his family, the SORNA and Texas Sex Offender laws impinge on his fundamental right to free association, travel, and to raise children without undue governmental interference.

86) Plaintiff imminently will be injured by these constitutional violations, and Plaintiff is entitled to declaratory and injunctive relief.


VIII.

Fourth Cause of Action

Violation of the Fourteenth Amendment to the
United States Constitution under 42 U.S.C. § 1983
(Equal Protection)

87) Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

88) Pursuant to 42 U.S.C. Section 1983, this claim is brought by Plaintiff against all Federal and State Defendants in their official capacities.

89) These laws are irrational, and designed only to burden an unpopular group. SORNA and the Texas Sex Offender laws thus violate the Equal Protection Clause of the U.S. Constitution.

90) Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.

IX.

Fifth Cause of Action

Violation of the Eighth Amendment to the

United States Constitution under 42 U.S.C. § 1983

(Cruel and Unusual Punishment)

91)  Plaintiff incorporates by reference each and every
allegation contained in the preceding paragraphs as set forth
fully herein.

92)  Pursuant to 42 U.S.C. Section 1983, this claim is brought by
Plaintiff against all Federal and State Defendants in their
official capacities.

93)  SORNA and the Texas Sex Offender laws impose extensive
punishments, both on persons previously convicted of sexual
offenses and prospectively, that are excessive in relation to the
crimes offenders are convicted of.

94)  Community notification can subject offenders to violence at
the hands of vigilantes.  Human Rights Watch, in a comprehensive
2007 study of Sex Offender laws (laws that were far less extreme
than SORNA and the Texas Sex Offender laws) and their effects
and utility, found that public safety was not furthered by
expansive notification and restriction provisions, but offenders
were subjected to vigilantism:

> "Information provided by state online sex offender
> registries, as well as information provided during community
> notification by law enforcement, is not just used by private
> citizens to determine what streets their children can walk
> on, or whom to avoid.  **Neighbors as well as strangers**

harass, intimidate, and physically assault people who have
committed sex offenses.  At least four registered sex
offenders have been killed."

p. 89, No Easy Answers: Sex Offender Laws in the U.S., Human

Rights Watch, available at http://www.hrw.org/reports/2007/us907/

us907web.pdf.  Plaintiff imminently will be injured by Eighth

Amendment violations, and the Plaintiff is entitled to

declaratory and injunctive relief.


X.

Sixth Cause of Action

Violation of Article 1, § 9 of the

United States Constitution under 42 U.S.C. § 1983

(Ex Post Facto)

95)  Plaintiff incorporates by reference each and every

allegation contained in the preceding paragraphs as set forth

fully herein.

96)  Pursuant to 42 U.S.C. § 1983, this claim is brought by

Plaintiff against all Federal and State Defendants in their

official capacities.

97)  The effect and intent of SORNA and the Texas Sex Offender

laws are punitive, and the Texas Sex Offender laws impose new

punishments on Plaintiffs,  including but not limited to the

affirmative disability of having periodically to re-register in

person, banishment from their families and communities, on

offenders convicted before their enactment.

98)  Plaintiff imminently will be injured by these constitutional

violations, and the Plaintiff is entitled to declaratory and

injunctive relief.

## XI.

### Seventh Cause of Action

Violation of the Fifth Amendment to the

United States Constitution under 42 U.S.C. § 1983

(Double Jeopardy)

99) Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

100) Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff against all Federal and State Defendants in their official capacities.

101) The SORNA and Texas Sex Offender laws impose new punishments on persons previously convicted, and imposed registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism, in violation of the Double Jeopardy Clause of the U.S. Constitution.

102) The Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.

## XII.

### Eighth Cause of Action

Violation of Article 1, § 10 of the

United States Constitution under 42 U.S.C. § 1983

(Contracts Clause)

103) Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

104) Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff against all Federal and State Defendants in their official capacities.

105) The Texas Sex Offender laws operate as a substantial impairment to the pre-existing contractual relationship between the Federal Government and Plaintiff's Guilty Plea Agreement by imposing new terms not negotiated which drastically increase, and/or require extensive supervision, registration and community notification.

106) The Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.


XIII.

Ninth Cause of Action

Violation of the State Contracts Clause

of the Texas Constitution, Art. I § 16

107) Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

108) This claim is brought by a Plaintiff against all Federal and State Defendants in their official capacities.

109) For the same reasons that the Texas Sex Offender laws violate the contracts clause of the U.S. Constitution, they violate the contracts clause of the Texas Constitution, Art. I § 16.

XIV.

Tenth Cause of Action

Violation of the Fifth Amendment to the

United States Constitution under 42 U.S.C. § 1983

(Takings Clause)

110) Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

111) Pursuant to 42 U.S.C. § 1983, this claim is brought by Plaintiff against all Federal and State Defendants in their official capacitites.

112) The Texas Sex Offender laws, by placing residential and movement restrictions on Plaintiff, unconstitutionally restricts Plaintiff's property rights to the point that it constitutes a regulatory taking requiring just compensation; further, such restrictions violate Art. I § 17 of the Texas State Constitution.

113) Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.

XV.

## Eleventh Cause of Action

Violation of the Separation of Powers

Doctrine of the Texas Constitution

114) Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

115) This claim is brought by Plaintiff against all Federal and State Defendants in their official capacities.

116) The SORNA and Texas Sex Offender laws violate the State Separation of Powers doctrine (Texas Const., Art. III) as it limits the judicial power of sentence finality where the law vacates existing court judgments regarding sex offenders, classifications, and community notification, and reverses final court judgments setting the length of time that sex offenders must register.

117) Plaintiff imminently will be injured by these constitutional violations, and the Plaintiff is entitled to declaratory and injunctive relief.


XVI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Honorable Court for the following:

a.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the Due Process Clause of the U.S. Constitution (U.S. CONST., Amend. 5);

b.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the Due Process Clause of the Texas Constitution (Texas Const. Art. I, § 19);

c.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the First Amendment of the United States Constitution (U.S. CONST., Amend. 1) and the Texas Constitution (Texas Const. Art. I, § 8);

d.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the right to practice religion without governmental interference protected by the Texas Constitution (Texas Const. Art. I, § 8);

e.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the equal protection clause of the United States Constitution (U.S. CONST., Amend. 14);

f.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the right to equal protection guaranteed by the Texas Constitution (Texas Const., Art. I, § 3a);

g.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the prohibition against cruel and unusual punishment contained in the United States Constitution (U.S. CONST., Amend. 8);

h.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the

prohibition against cruel and unusual punishment contained in the Texas Constitution (Texas Const., Art. I, § 13);

i.  A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the Ex Post Facto clause of the United States Constitution (U.S. CONST., Art. 1, § 9, cl. 10);

j.  A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the Ex Post Facto clause of the Texas Constitution (Texas Const., Art. I, § 16);

k.  A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the Double Jeopardy clause of the United States Constitution (U.S. CONST., Amend. 5 and 14);

l.  A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the Double Jeopardy clause of the Texas Constitution (Texas Const., Art. I, § 14);

m.  A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the contracts clause of the Texas Constitution (Texas Const., Art. I, § 16);

o.  A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the takings clause of the United States Constitution (U.S. CONST., Amend. 5);

p.    A declaration that SORNA and Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the takings clause of the Texas Constitution (Texas Const., Art. I, § 17);

q.    A declaration that SORNA and the Texas Sex Offender laws violate, both facially and as applied to the Plaintiff, the separation of powers doctrine of the Texas Constitution;

r.    A permanent injunction prohibiting each Defendant from enforcing SORNA and the Texas Sex Offender laws;

s.    Any further relief the Court deems appropriate.


XVII.

Demand for Jury Trial

Plaintiff demands a trial by jury on all causes of action.


Ronald C. Pearson
1132 Rock Creek Drive
Garland, Texas 75040


AFFIRMATION


I affirm that the above and foregoing is true and correct pursuant to 28 USC § 1746.


Ronald C. Pearson


-46-