IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD C. PEARSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO.  3:09-CV-0682-O-BH |
| | § | ECF |
| ERIC HOLDER, UNITED STATES | § | |
| ATTORNEY GENERAL, *et al.,* | § | |
| Defendants. | § | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

JAMES T. JACKS
Acting United States Attorney

ANN C. ROBERTS
Assistant United States Attorney
Texas State Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Tel:   806.472.7397
Fax:   806.472.7324
Email: ann.roberts@usdoj.gov

Attorneys for the United States

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii-ix

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      A.    Statutory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

            1.    Sex Offender Registration and Notification Act ("SORNA") . . . .  3

            2.    Sex Offender Registration Act in Texas . . . . . . . . . . . . . . . . . . . . .  9

      B.    Factual and Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

IV.   ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

      A.    Plaintiff's Claims are not Ripe for Determination . . . . . . . . . . . . . . . . . .  12

      B.    Plaintiff Lacks Standing to Challenge SORNA Based on Provisions of the
            Act that Do Not Apply to Him or as a Result of Injury Allegedly Caused (or
            suffered) Solely By the State of Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

            1.    Plaintiff Lacks Standing to Challenge Provisions of SORNA that Do
                  Not Apply to Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

            2.    Plaintiff Lacks Standing to Sue the Federal Defendants for Harm
                  Allegedly Caused by the Conduct of the State of Texas . . . . . . . .  18

      C.    Plaintiff Fails to State a Claim Upon Which Relief Can be Granted . . . .  19

            1.    Plaintiff's Due Process Rights Are Not Violated by SORNA . . . .  20

            2.    SORNA Does Not Violate Plaintiff's Right to Travel . . . . . . . . .  23

            3.    SORNA Does Not Violate Equal Protection . . . . . . . . . . . . . . . . .  24

4.    The Registration Requirements of SORNA Are Civil, Not Punitive, in Nature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

5.    The Registration Requirements of SORNA Do Not Violate Separation of Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

6.    18 U.S.C. § 2250 Does Not Violate the Commerce Clause . . . . .   28

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

CERTIFICATE OF CONFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE(S)**

*Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal,* — S.Ct. —, 2009 WL 1361536 (May 18, 2009). . . . . . . . . . . . . . . . 12

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Blum v. Bacon,* 457 U.S. 132 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cal. Dep't of Corrections v. Morales,* 514 U.S. 499 . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Connecticut Dep't of Public Safety v. Doe,* 538 U.S. 1 (2003). . . . . . . . . . . . . . . 21, 22, 23

*Daimler Chrysler Corp. v. Cuno,* 547 U.S. 332 (2006). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Doe I v. Otte,* 259 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 23

*Doe v. Tandeske,* 361 F.3d 594 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Dry v. United States,* 235 F.3d 1249 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hatton v. Bonner,* 356 F.3d 955 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 27

*Hitt v. City of Pasadena,* 561 F.2d 606 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . 11

*John Corp. v. City of Houston,* 214 F.3d 573 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . 11

*McDaniel v. United States,* 899 F. Supp. 305 (E.D. Tex. 1995). . . . . . . . . . . . . . . . . . . 10

*McKune v. Lile,* 536 U.S. 24 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507 (5th Cir. 1980). . . . . . . . . . . . . . . . . 10

iv

**FEDERAL CASES CONTINUED**                                    **PAGE(S)**

*O'Grady v. Village of Libertyville,* 304 F.3d 719 (7th Cir. 2002). . . . . . . . . . . . . . . . . . 18

*Papasan v. Allain,* 478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Parker v. Levy,* 417 U.S. 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Paul v. Davis,* 424 U.S. 693 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Reno v. Condon,* 528 U.S. 141 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Restigouche, Inc. V. Town of Jupiter,* 59 F.3d 1208 (11th Cir. 1995). . . . . . . . . . . . . . . 11

*Rivera v. Wyeth-Ayerst laboratories,* 283 F.3d 315 (5th Cir. 2002) . . . . . . . . . . . .   13, 19

*S. Christian Leadership Conference v. Supreme Court of Louisiana,* 252 F.3d 781 (5th
Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*San Diego Cnty. Gun Rights Comm. v. Reno,* 98 F.3d 1121 (9th Cir. 1996). . . . . . . . . . 28

*Schall v. Martin,* 467 U.S. 253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Smith v. Doe,* 538 U.S. 84 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . 14

*Strandberg v. City of Helena,* 791 F.2d 744 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . 17

*Suddarth v. Slane,* 539 F. Supp. 612 (D. Va. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tennessee Electric Power Company v. Tennessee Valley Authority,* 306 U.S. 118 (1939)17

*United States v. Ambert,* 561 F.3d 1202 (11th Cir. 2009). . . . . . . . . . . . . . . . 15, 21, 24, 28

*United States v. Benevento,* 2009 WL 1111257 (D. Nev. Apr. 21, 2009) . .   15, 16, 23, 24

*United States v. Contreras,* 2008 WL 5272491 (W.D. Tex. 2008) . . . . . . . . . . . . . . .   16

**FEDERAL CASES CONTINUED**                                    <u>PAGE(S)</u>

*United States v. Crum*, 2008 WL 4542408 (W.D. Wash. Oct. 8, 2008) . . . . . . .  15, 16, 24

*United States v. Dixon,* 551 F.3d 578 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . 17, 27

*United States v. Hinckley,* 550 F.3d 926 (10th Cir. 2008). . . . . . . . . . . . . . . . . . 15, 17, 27

*United States v. Keleher*, 2008 WL 5054116 (E.D. Cal. Nov. 19, 2008) . . .  15, 16, 17, 21

*United States v. LeMay,* 260 F.3d 1018 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. LeTourneau,* 534 F.Supp.2d 718       . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*United States v. May,* 535 F.3d 912 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 17, 27

*United States v. Mi Kyung Byun,* 539 F.3d 982 (9th Cir. 2008). . . . . . . . . . . . . . 17, 18, 27

*United States v. Morris,* 2009 WL 753989 (D. Nev. March 18, 2009) . . . . . . .  15, 16, 17

*United States v. Morrison,* 529 U.S. 598 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Nam Van Hoang*, 2008 WL 4610249 (M.D. La. 2008) . . . . . . . . . . .  24

*United States v. Passaro*, 2007 WL 6147936 (S.D. Cal. Dec. 17, 2007) . . . . . . .  15, 16, 24

*United States v. Reader*, 2008 WL 4790114 (W.D. Tex. 2008) . . . . . . . . . . . .  15, 17, 26

*United States v. Santana,* 584 F. Supp. 2d 941 (W.D. Tex. 2008). . . . . . . . . . . . . . . . 29

*United States v. Saterno,* 481 US 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Thompson,* 595 F. Supp. 2d 143 (D. Maine 2009). . . . . . . . . . . . . . . 29

*United States v. Torres,* 573 F.Supp.2d 925 (W.D. Texas August 21, 2008). 17, 21, 26, 29

*United States v. Vardaro,* 575 F. Supp. 2d 1179 (D. Montana 2008). . . . . . . . . . . . . . 17

*United States v. Watchman*, 2009 WL 464995 (D. Ariz. 2009) . . . . . . . . . . . .  15, 16, 17

**FEDERAL CASES CONTINUED**                                   **PAGE(S)**

*United States v. Waybright,* 561 F. Supp. 2d 1154 (D. Mont. 2008)................ 28

*United States v. Wilson,* 210 F.3d 230 (4th Cir. 2000). ......................... 18

*Washington v. Glucksberg,* 521 U.S. 702 (1997). ............................. 22

*Williamson v. Tucker,* 645 F.2d 404 (1981).................................. 11

**FEDERAL STATUTES AND REGULATIONS**

18 U.S.C. § 2250. .................................... 8, 9, 17, 21, 23, 24, 28, 29

42 U.S.C. § 1983. ............................................... 12

42 U.S.C. § 3750. ............................................... 5

42 U.S.C. § 14071. ............................................. 25

42 U.S.C. §§ 14071-72. ........................................ 5, 6

42 U.S.C. § 16901. .......................................... 6, 26

42 U.S.C. § 16911. ......................................... 7, 21, 22

42 U.S.C. § 16912(a). ........................................... 7

42 U.S.C. § 16913(a). ........................................ 20, 23

42 U.S.C. § 16913(d). .......................................... 15

42 U.S.C. § 16914. .......................................... 7, 20

42 U.S.C. § 16915 .......................................... 7, 22

**FEDERAL STATUTES AND REGULATIONS CONTINUED**          **PAGE(S)**

42 U.S.C. § 16916. ......................................... 7, 22

**FEDERAL STATUTES AND REGULATIONS CONTINUED**                    **PAGE(S)**

42 U.S.C. § 16918. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

42 U.S.C. § 16923. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. § 16924. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

42 U.S.C. § 16925(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

42 U.S.C. § 16925(b)(1)-(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 28

28 C.F.R. § 72.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

73 Fed. Reg. 38030 (July 2, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATE STATUTES**

Tex. Code Crim. Proc. Art. 62.051(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11

Fed. R. Civ. P. 25(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

**MISCELLANEOUS**                                                    **PAGE(S)**

H.R. Rep. 103-392, 103rd Cong., 1st Sess., 1993 WL 484758 . . . . . . . . . . . . . . .  4, 5, 6

H.R. Rep. 104-555, 104th Cong., 2nd Sess., 1996 U.S.C.C.A.N. 980, 984, 1996 WL 228657. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

H.R. Rep. 105-256 at 8-9, 105th Cong., 1st Sess., 1997 WL 584298 . . . . . . . . . . .  5, 6, 8

H.R. Rep. 109-218 (I) at 22, 109th Cong., 1st Sess., 2005 WL 2210642 .. . . . .  3, 4, 6, 26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD C. PEARSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO.  3:09-CV-0682-O-BH |
| | § | ECF |
| ERIC HOLDER, United States | § | |
| Attorney General, *et al.,* | § | |
| Defendants. | § | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT THEREOF

Federal Defendants Eric H. Holder, Jr., Attorney General for the United States of America, and James T. Jacks[1], Acting United States Attorney for the Northern District of Texas, by and through the United States Attorney for the Northern District of Texas, file this Motion to Dismiss and Brief in Support Thereof, and would show the Court as follows:

## I.  INTRODUCTION

The "risk of recidivism posed by sex offenders is 'frightening and high.'" *Smith v. Doe*, 538 U.S. 84, 103 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002).  Thus, sex offenders pose a unique public threat: they have a high recidivism rate with respect to their crimes; they prey on the most vulnerable members of society; they inflict

---

[1]Jane Boyle is an improper defendant in her official capacity, as she is not the current United States Attorney for the Northern District of Texas.  She should be replaced by James T. Jacks pursuant to Federal Rule of Civil Procedure 25(d).

**Federal Defendants' Motion to Dismiss and Brief in Support Thereof - Page 1**

devastating, life-altering injuries; and they often act with impunity because many sex offenses, particularly those against children, go unreported.  In response to the gravity of the threat posed by sex offenders, states and the federal government have implemented sex offender registration schemes to enable citizens to better protect themselves and children from sexual predation and to facilitate law enforcement investigations.  These schemes, including the Sex Offender Registration and Notification Act (hereinafter "SORNA"), have been overwhelmingly upheld against constitutional challenges by the Supreme Court, other courts of appeals, and by many district courts.

Despite this overwhelming body of case law, plaintiff, proceeding *pro se*, repeats the same unsuccessful challenges to the constitutionality of SORNA and state registration schemes.  In so doing, however, he altogether ignores the relevance of many of these claims to those sparsely-alleged facts underlying his federal conviction and his purported injury.  Plaintiff lacks standing to raise constitutional challenges that (1) relate only to individuals who, unlike plaintiff, were convicted prior to the passage of SORNA, *infra* at 13-18, (2) raise interests that may be asserted only by the states, *infra* at 17, or (3) explicitly allege injury based solely on state action, *infra* at 18-19.

Those remaining claims that fall outside these categories should still be dismissed by this Court pursuant to Federal Rule of Civil Procedure 12(b)(6), as the federal courts, including the Supreme Court, have recognized them to be without merit.  SORNA, a civil registration scheme that supplements state efforts to monitor sex offenders, helps serve

the "legitimate nonpunitive purpose of 'public safety, which is advanced by alerting the public to the risk of sex offenders in their community.'"  *Smith*, 538 U.S. at 102-03 (quoting *Doe I v. Otte*, 259 F.3d 979, 991 (9th Cir. 2001)).  Plaintiff may disagree with this recognized purpose, or the manner in which the states and Congress have sought to achieve it, but that tension does not provide a valid basis for a constitutional challenge against SORNA.

## II.  BACKGROUND

### A.    STATUTORY BACKGROUND

#### 1.    Sex Offender Registration and Notification Act ("SORNA")

States generally began to adopt sex offender registration programs about 20 years ago in order to protect the public, particularly children, from the risks posed by released sex offenders.  As statistics mounted about the "staggering toll that violence" imposed on youths and others, all states eventually required released sex offenders to register their names and addresses with state or local agencies.  *See* Children's Safety Act of 2005, H.R. Rep. 109-218 (I) at 22, 109th Cong., 1st Sess., 2005 WL 2210642.  Studies confirmed that sex offenders were a particularly apt class of offenders for registration: sex offenders had recidivism rates that often exceeded those of other criminals; polygraph examinations on a sample of sex offenders with fewer than two known victims (on average) found that offenders actually had an average of 110 victims and 318 offenses; released child molesters were more likely to be rearrested for child molestation than

non-child molesters; released sex offenders were four times more likely to be rearrested for a sex crime than non-sex offenders; the median age of victims of imprisoned sexual assaulters was less than 13 years old; and in 15 states in 1994, 5.3% of 9,691 sex offenders who were released from prison were arrested for a new sex crime within three years of release (meaning that 480 sex offenders committed new sex crimes). *Id.* at 23. In their most basic character, sex offender registration laws provide systems for tracking sex offenders following their release into the community. *See* 73 Fed. Reg. 38030 (July 2, 2008); The National Guidelines for Sex Offender Registration and Notification, Final Guidelines (June 2008) at 3, *available at* http://www.ojp.usdoj.gov/smart/guidelines.htm ("SORNA Guidelines").

Sex offender registration programs existed in 24 states including California, at the time of Congress' consideration of the first federal standards in 1993 (subsequently enacted through federal spending clause legislation in 1994). *See* Jacob Wetterling Crimes Against Children Registration Act, P.L. 103-322, H.R. Rep. 103-392 at 6, 103rd Cong., 1st Sess., 1993 WL 484758. At that time, Congress determined that state programs allowed states to monitor sex offenders within state boundaries, but had "little capability to monitor such persons once they establish[ed] residence in another state" and lacked a mechanism to place other states on notice "that a person with a history of criminal conduct against children in another jurisdiction ha[d] taken up residence in that state." *Id.* at 6. The federal standards therefore sought to establish guidelines for

"programs to provide States with this information and assist law enforcement agencies in the prevention and deterrence of crimes against children." *Id.* Under those federal standards, states were encouraged to set up programs to register criminals convicted of sexually violent offenses and certain offenses against minors after release from prison, or if sentenced to parole, supervised release, or probation, for a period of 10 years. *See id.* § 2. Under the standards, a state would stand to lose 10% of its funding under the Edward Byrne Memorial Justice Assistance Grant Program, 42 U.S.C. § 3750, if it failed to implement a compliant program within three years of enactment of the Jacob Wetterling Act.

In the next few years, Congress amended and strengthened the provisions of the Jacob Wetterling Act. *See generally* Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Improvements Act of 1997, H.R. Rep. 105-256 at 8-9, 105th Cong., 1st Sess., 1997 WL 584298. In 1996, "Megan's Law" encouraged states to disclose information about child molesters or other sexually violent criminals to persons "who need it for security of themselves and their families." H.R. Rep. 104-555, 104th Cong., 2nd Sess., 1996 U.S.C.C.A.N. 980, 984, 1996 WL 228657. Later that year, Congress again strengthened the Jacob Wetterling registration standards by requiring lifetime registration for twice-convicted sex offenders or for sex offenders convicted of aggravated offenses. Pam Lychner Sexual Offender Tracking and Identification Act of 1996, codified at 42 U.S.C. §§ 14071-72 (hereinafter "Lychner Act"). The Lychner Act

also contained provisions to ensure nationwide availability of registration information to law enforcement. *Id.* By May 1996, all 50 states and the District of Columbia had some sort of registration system for released sex offenders in place. *See* H.R. Rep. 105-256 at 6, 1997 WL 584298.

With wide support, the Adam Walsh Child Protection and Safety Act of 2006 (hereinafter "Act") was enacted on July 27, 2006, to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub. L. 109-248, 120 Stat. 587, codified at 42 U.S.C. § 16901 *et seq.* (2006). Included among the provisions of the Act was an effort by Congress to codify a comprehensive set of standards to govern state sex offender registration and notification programs through the Sex Offender Registration and Notification Act. Title I, Pub. L. 109-248, 120 Stat. at 590 (hereinafter "SORNA"). Although the federal laws dating back to 1994 had previously prescribed national standards for sex offender registration through federal spending clause incentives, "[u]ltimately, Congress concluded [in 2006] that the patchwork of standards that had resulted from piecemeal amendments should be replaced with a comprehensive new set of standards—the SORNA reforms—that would close potential gaps and loopholes under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs." SORNA Guidelines at 4; *see also* Children's Safety Act of 2005, H.R. Rep. 109-218 (I) at 23, 109th Cong., 1st

Sess., 2005 WL 2210642.

SORNA, like the predecessor national standards of the Wetterling Act, is spending clause legislation that conditions full funding on states' establishing SORNA-compliant registration programs. 42 U.S.C. §§ 16912(a), 16924, 16925(a), (c), (d). Among other things, in order to be SORNA-compliant, state registrations must collect various specified types of information, such as names, addresses, physical descriptions, criminal history information, and photographs of offenders. *Id.* § 16914(a), (b). SORNA also increased the time of registration for certain classes of sex offenders based on type of conviction alone, requiring 15 years for Tier I offenders; 25 years for Tier II offenders; and lifetime registration for Tier III offenders; absent a reduction based on maintaining a "clean record" for 10 years for Tier I offenders, or 25 years for Tier III juvenile offenders. *Id.* § 16915(a), (b). SORNA required in-person verification of registry information as well, *id.* § 16916, and provided for public dissemination of certain information on internet registries. *Id.* § 16918. The registration requirements are retroactively applicable to all persons who were convicted of a "sex offense" within the meaning of SORNA. *Id.* § 16911(1); SORNA Guidelines at 7-8.

Jurisdictions were provided until July 27, 2009 (or one year after the date on which federal registration software was made available pursuant to 42 U.S.C. § 16923) to comply with SORNA to remain eligible for full federal funding, although the Attorney General maintains the authorization to grant up to two 1-year extensions of the deadline.

*Id.* § 16924. Any state failing to substantially implement SORNA standards in its registration programs would have its funding reduced by 10% under the Edward Byrne Memorial Justice Assistance Grant Program. 42 U.S.C. § 16925(a). If, however, a jurisdiction could show (1) a "demonstrated inability to implement certain provisions" because to do so "would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court"; and (2) that it has implemented alternative measures, the Attorney General maintains the authority not to reduce the jurisdiction's funding. *Id.* § 16925(b)(1)-(3).

The federal standards "serve as a floor, not a ceiling, for States as they implement sex offender registration programs." Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Improvements Act of 1997, H.R. Rep. 105-256, 105th Cong., 1st Sess., 1997 WL 584298. "SORNA establishes a national baseline for sex offender registration and notification programs. In other words, the Act generally constitutes a set of *minimum* national standards and sets a floor, not a ceiling, for jurisdictions' programs." SORNA Guidelines at 6; *see also id.* at 69-70. Thus, a jurisdiction remains free, for example, to "require sex offenders to register for longer periods than those required by the SORNA standards," or to require other classes of convicted offenders to register. *Id.* at 7; 70 (explaining that some jurisdictions required lifetime registration for all sex offenders); 73 (same).

SORNA also enacted 18 U.S.C. § 2250, which establishes criminal liability for a

sex offender who "knowingly fails to register or update a registration" despite being required to do so by SORNA. *See* Pub. L. No. 109-248, § 141(a). Such an individual generally must either have been convicted of a federal offense requiring registration or have traveled in interstate or foreign commerce before criminal liability may attach. *See* 18 U.S.C. § 2250(a)(2).

### 2. Sex Offender Registration Act in Texas

Pursuant to Texas law, "a person who has a reportable conviction or adjudication or who is required to register . . . shall register . . with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." Tex. Code Crim. Proc. Art. 62.051(a).

## B. FACTUAL AND PROCEDURAL BACKGROUND

On April 15, 2009, plaintiff filed the instant Complaint against federal[2], state, and local officials, challenging the constitutionality of SORNA and the Texas sex offender registration laws on a multitude of grounds. Plaintiff provides little factual context in his Complaint as a basis for his allegations, stating only that he "was convicted of a sexual offense in 2007" via a "plea agreement" with the federal government, and has now been "informed that he is required to register as a sex offender as a condition of his federal supervised release." Compl. ¶¶ 3, 66. This requirement purportedly causes plaintiff to

---

[2] Jane Boyle is an improper defendant in her official capacity, as she is not the current United States Attorney for the Northern District of Texas. She should be replaced by James T. Jacks pursuant to Federal Rule of Civil Procedure 25(d).

worry "that he will be subjected to harassment and embarrassment upon community notification of his sex offender status." *Id.* at ¶ 66. In fact, plaintiff alleges that "[h]e never would have accepted the plea deal if he knew what the State of Texas would subject him to." According to a recent filing by the plaintiff, he was sentenced on December 20, 2007, in case number 3:06-CR-369, ". . .to 70 months imprisonment and lifetime supervised release for receipt of child pornography through interstate and foreign commerce . . ." *See Response to Garland Texas Chief of Police' Motion to Dismiss, Document #9.* Upon reading plaintiff's Complaint, it is clear that the Complaint is an almost identical copy of a complaint filed by Scott Sperling in California, case number CV09-2370 PA (JWJx). So similar in fact, that plaintiff's Complaint even mentions California and California's sex offender statutes.

## III.  <u>STANDARD OF REVIEW</u>

A motion to dismiss should be granted when a court lacks subject-matter jurisdiction over an action, or the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), (6). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions,

the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). If a claim is not yet ripe, the district court does not have subject matter jurisdiction over the claim. *John Corp. v. City of Houston,* 214 F.3d 573, 576 (5th Cir. 2000). The ripeness doctrine prevents "courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149 (1967). To satisfy the "case or controversy" requirement of Article III, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-102 (1983). Assuming that there is sufficient injury to meet the requirements of a case or controversy, the ripeness inquiry focuses on whether the claim has been brought at a point so early that it is not yet clear whether a sufficiently mature and concrete dispute exists between the parties. *Restigouche, Inc. v. Town of Jupiter,* 59 F.3d 1208, 1212 (11th Cir. 1995).

"To survive a motion to dismiss," pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, — S.Ct. —, 2009 WL 1361536, *12 (May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6)."  *S. Christian Leadership Conference v. Supreme Court of Louisiana,* 252 F.3d 781, 786 (5th Cir. 2001).

## IV.  <u>ARGUMENT[3] AND AUTHORITIES</u>

### A.    PLAINTIFF'S CLAIMS ARE NOT RIPE FOR DETERMINATION

All of plaintiff's claims relate to his assertion that he must comply with SORNA and the Texas sex offender laws as a condition of his supervised release from prison, a supervised release that will not begin until plaintiff has served his 70 month period of incarceration.  *See* Complaint, pp. 3-4; 33-44; *see also* Document #9 (which states that the plaintiff is currently serving the 70 month period of incarceration.)   Plaintiff's claims are not ripe for determination as he is currently incarcerated in federal prison, serving a 70 month sentence for possession of child pornography that would purportedly not expire until 2013.  Plaintiff is not presently required to register as a sexual offender; he is only required to register upon his release from prison, something that has yet to occur.

---

[3] Plaintiff states that he seeks to proceed against the defendants "under 42 U.S.C. § 1983." Compl. at 1.  That provision is inapplicable to the federal defendants, and relief is accordingly not proper pursuant to section 1983.  *See, e.g., Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).

Moreover, plaintiff is currently attempting to appeal his sentence in the form of a habeas petition, and specifically the conditions of his supervised released. Until plaintiff is either released from prison or has at least completed his collateral challenge to his conviction and period of supervised release, the appeal of his sentence, specifically the registration requirements of his supervised release is final and unappealable, and he faces no imminent threat of being subject to sex offender registration requirements. After all, there is no way to predict what form such requirements would take, or whether they would even still exist once plaintiff's sentence expires. Four years from now, SORNA may have been amended, altered, or even repealed. Consequently, there is not a sufficiently mature and concrete dispute as to the application of SORNA or the Texas Sex Offender laws to plaintiff that would provide the Court with jurisdiction over this dispute.

**B.     PLAINTIFF LACKS STANDING TO CHALLENGE SORNA BASED ON PROVISIONS OF THE ACT THAT DO NOT APPLY TO HIM OR AS A RESULT OF INJURY ALLEGEDLY CAUSED (OR SUFFERED) SOLELY BY THE STATE OF TEXAS**

Plaintiff has raised a voluminous number of scatter-shot claims against the actions of the federal defendants and the constitutionality of SORNA. In doing so, however, plaintiff often loses sight of the fact that his legal challenges against these defendants must be tied to concrete injury suffered by him as a result of the application of SORNA that is redressable by an order of this Court. *Rivera v. Wyeth-Ayerst laboratories,* 283 F.3d 315, 318 (5th Cir. 2002). The requirements of injury-in-fact, traceability, and redressability "constitute[] the core of Article III's case-or-controversy requirement, and

the party invoking federal jurisdiction bears the burden of establishing its existence."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-104 (1998); *see also Daimler*

*Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). ("A plaintiff must demonstrate

standing 'for each claim he seeks to press' and for 'each form of relief sought.'").

Several of the claims alleged in the Complaint[4] ignore these requirements by challenging

provisions of SORNA that are unrelated to plaintiff's alleged conduct or by alleging that a

party other than the federal government is responsible for his purported harm.  This Court

lacks jurisdiction to consider such hypothetical claims.

**1.     Plaintiff Lacks Standing to Challenge Provisions of SORNA that Do Not Apply to Him**

As the Supreme Court explained in the seminal case of *Broadrick v. Oklahoma*,

413 U.S. 601, 610 (1973), "a person to whom a statute may constitutionally be applied

will not be heard to challenge that statute on the ground that it may conceivably be

applied unconstitutionally to others, in other situations not before the Court."  This maxim

is "[e]mbedded in the traditional rules governing constitutional adjudication," in

conjunction with the rule that "constitutional rights are personal and may not be asserted

vicariously."  *Id.*  The exception to this rule, the overbreadth doctrine, is reserved for the

protection of First Amendment freedoms.  *See United States v. Saterno,* 481 US 739, 745

(1987).

---

[4] As plaintiff is proceeding *pro se*, the federal defendants have attempted to respond to all of the potential claims asserted in plaintiff's Complaint, not simply those claims labeled as "causes of action."

Plaintiff has raised several constitutional challenges to applications of SORNA that have no connection to his alleged conduct or federal criminal conviction. First, plaintiff argues that Congress violated the nondelegation doctrine by giving the Attorney General the authority to determine the applicability of SORNA to those individuals convicted of sex offenses *prior to* the effective date of the statute. *See* Compl. at 9-10 (". . . Congress impermissibly delegated the crucial decision of whether the Act should be applied retroactively. *See* 42 U.S.C. § 16913(d)."). Whatever the import of this argument[5], it has no application to plaintiff, who admits that he "was convicted of a sexual offense" *after* the July 27, 2006, effective date of SORNA. Compl. ¶ 3 (alleging that he was convicted of a sexual offense in 2007); *see also id.* ¶ 11 (recognizing July 27, 2006, effective date of SORNA). Accordingly, even if the application of SORNA to convictions prior to the statute's effective date were declared unconstitutional, it would have no effect on plaintiff's obligation to register. Therefore, plaintiff lacks standing to challenge the constitutionality of the delegation provision. *See, e.g., United States v. Hinckley*, 550 F.3d 926, 939 (10th Cir. 2008) ("Because Mr. Hinckley is not an offender 'unable to comply with . . . subsection (b),' we need not reach this argument."); *United*

---

[5] "Indeed, [e]very court that has confronted the issue has held that this delegation of authority is not so broad as to contravene the nondelegation doctrine." *United States v. Watchman*, Slip Op at *6, 2009 WL 464995 (D. Ariz. 2009) (internal quotation omitted); *see also, e.g., United States v. Ambert*, 561 F.3d 1202, 1212-14 (11th Cir. 2009); *United States v. Reader,* 2008 WL 4790114 at *10 (W.D. Tex. 2008); *United States v. Benevento*, SlipOp.at *13-14, 2009 WL 1111257 (D. Nev. Apr. 21, 2009); *United States v. Morris,* Slip Op. at *20-21, 2009 WL 753989 (D. Nev. March 18, 2009); *United States v. Keleher,* Slip Op. at *12-15, 2008 WL 5054116 (E.D. Cal. Nov. 19, 2008); *United States v. Crum,* Slip Op. at *5-6, 2008 WL 4542408 (W.D. Wash. Oct. 8, 2008); *United States v. Passaro,* Slip Op. at *14-15, 2007 WL 6147936 (S.D. Cal. Dec. 17, 2007).

*States v. May*, 535 F.3d 912, 921 (8th Cir. 2008) ("Because May was not a person unable to register before SORNA's enactment . . ., May lacks standing to raise this challenge.").

The same analysis applies to plaintiff's Administrative Procedure Act challenge to the Attorney General's use of his delegated authority in promulgating 28 C.F.R. § 72.3. Plaintiff argues that the regulation, "which purportedly applies SORNA retroactively" to convictions prior to SORNA's effective date, violates the APA "because it was promulgated absent a 30-day notice and comment period." Compl. ¶ 57. However, the alleged invalidity of that regulation[6] is irrelevant to SORNA's application to plaintiff, as the Act would still apply to him even in the absence of the "retroactive" regulation. Thus, plaintiff has not alleged, and cannot establish, that he is harmed in any fashion by the issuance of the regulation. *See Us v. Contreras,* 2008 WL 5272491 at *7 (finding that prisoner had standing to challenge interim regulation only because he was a member of the class affected by that regulation); *United States v. Keleher*, Slip Op. at *17, 2008 WL 5054116 (E.D. Cal. Nov. 19, 2008) ("Defendant lacks standing to challenge the interim rule which did not impact his duty . . . to maintain his registration in conformity with SORNA's mandate.").

Plaintiff next argues that SORNA violates the Tenth Amendment by

---

[6] Even if this claim were evaluated on its merits, courts have overwhelmingly held that "[t]he Attorney General did not violate the APA by promulgating the interim rule without prior notice or comment." *Morris*, Slip Op. At *24, 2009 WL 753989*; see also, e.g.*, *Benevento*, Slip Op. at *14, 2009 WL 1111257; *Watchman*, Slip Op. at *6, 2009 WL 464995; *Passaro*, Slip Op. at *11-12, 2007 WL 6147936; *Contreras*, Slip Op. At *9, 2008 WL 5272491.

"encroach[ing] upon state power." Compl. at 31-33.  This argument suffers from the fact

that this alleged violation purportedly encroaches upon authority possessed by the state,

not a constitutional right held by plaintiff.  Plaintiff, a private citizen, acting on his own

behalf and not in an official capacity or on behalf of the state citizenry, lacks standing to

raise a Tenth Amendment Claim.  *See Tennessee Electric Power Company v. Tennessee*

*Valley Authority,* 306 U.S. 118, 145 (1939); *United States v. Torres,* 573 F.Supp. 2d 925,

950 (W.D. Texas August 21, 2008); *Reeder,* 2008 WL 4790114 at \*11-12; *United States*

*v. Morris*, Slip Op. at \*24, 2009 WL 753989 (D. Nev. March 18, 2009); *United States v.*

*Watchman*, Slip Op. at \*6, 2009 WL 464995 (D. Ariz. Feb. 24, 2009); *United States v.*

*Vardaro*, 575 F. Supp. 2d 1179, 1190 (D. Montana 2008).

Finally, plaintiff asserts a claim under the *ex post facto* clause of the United States

Constitution, Art. I § 9 cl.3, on the ground that "[p]rosecution for failure to register under

SORNA for crimes committed prior to the passage of SORNA" constitutes *ex post facto*

punishment.  Compl. at 17-25, 40-41.  Whatever the impact of this argument[7], it is

unrelated to the case presently before the Court.  As plaintiff acknowledges, the *ex post*

---

[7] Courts have overwhelmingly recognized that SORNA (and laws like it) are civil, rather than criminal, in nature and therefore lack impermissibly punitive effect.  *See infra* at 21-22; *United States v. LeTourneau,* 534 F.Supp.2d 718, 720-21 (S.D. Tex. 2008); *United States v. Mi Kyung Byun,* 539 F.3d 982, 993 n.14 (9th Cir. 2008) ("Here . . . we are faced not with a statute that imposes criminal punishment, but rather with a civil statute creating registration requirements."); *Hatton v. Bonner,* 356 F.3d 955, 967 (9th Cir. 2004); *see also, e.g., Smith v. Doe,* 538 U.S. 84 (2003); *United States v. Dixon*, 551 F.3d 578, 584 (7th Cir. 2008); *Hinckley*, 550 F.3d at 936-38; *May*, 535 F.3d at 919-20.  In fact, any penalty that may be imposed on plaintiff by virtue of SORNA would necessarily be based on his failure to register *following* the Act's enactment, *see, e.g.*, 18 U.S.C. § 2250, which would necessarily be prospective in nature.

*facto* clause prohibits the retroactive application of legislation intended to punish conduct that occurred prior to its passage. *See, e.g., Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 504(1995). Here, however, plaintiff has not alleged that his conviction was based solely on conduct that predates the passage of SORNA. Rather, plaintiff's only allegation in this regard is that he was convicted of a sex offense in 2007, at least six months after the passage of the Act. Compl. ¶ 3; Document #9. Accordingly, any "punitive effect" allegedly resulting from SORNA would still not have an impermissibly retroactive application to plaintiff. *See O'Grady v. Village of Libertyville*, 304 F.3d 719, 724 (7th Cir. 2002) (holding that individual unaffected by retroactive application of law cannot raise *ex post facto* claim on behalf of another); *see also United States v. Wilson*, 210 F.3d 230, 234-35 (4th Cir. 2000) (finding no *ex post facto* violation when conduct alleged in indictment occurred after the passage of the statute in question). As plaintiff would be unaffected by any ruling that this Court would issue concerning the constitutional validity of a retroactive application of SORNA to conduct predating its passage, he lacks standing to raise this claim on behalf of others.

### 2. Plaintiff Lacks Standing to Sue the Federal Defendants for Harm Allegedly Caused by the Conduct of the State of Texas

In several counts of the Complaint, plaintiff purports to sue federal officials for actions that he alleges to be caused solely by application of the Texas sex offender registration laws. *See* Compl. at 35-36 (alleging violation of First Amendment based on purported prohibitions "under the Texas Sex Offenders statutes" that prevent him from

attending church); 40-41 (alleging violation of contracts clause of United States

Constitution on the ground that "Texas Sex Offender laws operate as a substantial

impairment to the pre-existing contractual relationship between the Federal Government

and Plaintiff's Guilty Plea Agreement"); 42 (alleging violation of contracts clause of

Texas constitution based on "the same reasons that the Texas Sex Offender laws violate

the contracts clause of the U.S. Constitution"); 42 (alleging violation of Takings Clause

from the manner in which "[t]he Texas Sex Offender laws . . . restricts [sic] Plaintiff's

property rights").[8]  As plaintiff concedes that SORNA has no role in contributing to the

injury of which he complains, he has failed to demonstrate that his purported injury is

traceable to the actions of the federal defendants or redressable by an opinion holding

SORNA unconstitutional. *See Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315, 318

(5th Cir. 2002) (holding that plaintiff must demonstrate that defendant caused injury).

Accordingly, he lacks standing to maintain these challenges against the federal

defendants.

## C.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In light of the "'time-honored presumption'" underlying the constitutionality of an

act of Congress, a court should "'invalidate a congressional enactment only upon a plain

showing that Congress has exceeded its constitutional bounds.'"  *Reno v. Condon*, 528

---

[8] It is understandable why plaintiff would not have included SORNA in his allegations with respect to these counts.  The purported restrictions on his exercise of religion or his property rights, whatever they may be, are not mandated by SORNA.

U.S. 141, 148 (2000); *United States v. Morrison*, 529 U.S. 598, 607(2000).  In light of the fact that the remaining claims that plaintiff raises to the constitutionality of SORNA have been overwhelmingly rejected by the federal courts, this Court should dismiss the Complaint in its entirety.

1.    **Plaintiff's Due Process Rights Are Not Violated by SORNA**

Plaintiff asserts that SORNA violates due process in that it is vague, lacks sufficient procedural protections, and is without a rational basis.  *See* Compl. at 34-35. Even assuming that plaintiff has a liberty interest protected by the due process clause that is implicated by SORNA[9], each of these contentions lacks merit.

Plaintiff asserts that SORNA is vague because it fails to "sufficiently define who is subject to the laws, what their effects are, and what the penalties for failure to comply with them are."  *Id.* ¶ 75.  It is difficult to understand the basis for this allegation, as SORNA's various provisions are explicit concerning the classes of offenders that the Act covers, their obligations, and the potential criminal penalties that accompany violations of the Act.  SORNA requires a "sex offender" to register "in each jurisdiction where the offender resides."  42 U.S.C. § 16913(a).  The Act defines a "sex offender" as an individual who committed a "sex offense," as further defined by the statute, including an enumerated list of federal offenses.  *Id.* § 16911(1), 5(A).  If a federal offender such as

---

[9] The mere publication of truthful information flowing from the fact of a prior conviction does not meaningfully implicate respondent's reputational interest, let alone deprive plaintiff of the kind of right or entitlement required by *Paul v. Davis*, 424 U.S. 693, 701(1976).  *See generally* 42 U.S.C. §§ 16914, 16918 (SORNA informational requirements).

plaintiff fails to register, the offender may be subject to federal and/or state offenses,

including a violation of 18 U.S.C. § 2250(a)(2)(A).

The allegations of plaintiff's Complaint reveal that he is under no misapprehension

about his registration obligations pursuant to SORNA. *See* Compl. ¶ 66 ("Plaintiff is

required to register as a sex offender."). As plaintiff is fully aware of his obligation to

register, he cannot challenge SORNA's registration requirements on vagueness grounds.

*See Parker v. Levy*, 417 U.S. 733, 755-56(1974); *Suddarth v. Slane*, 539 F. Supp. 612,

620 (D. Va. 1982); *see also United States v. LeTourneau,* 534 F.Supp.2d at 723 (holding

that prior knowledge of a duty to register "qualifies as constitutionally effective notice

under SORNA").

Plaintiff next argues that his procedural due process rights are violated by SORNA

because he is not given the opportunity for a hearing prior to registration. Compl. ¶ 76.

However, this claim has been squarely foreclosed by the Supreme Court's decision in

*Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1(2003), in which the Supreme Court

upheld Connecticut's sex offender registration scheme against a due process challenge.

*See, e.g., Ambert*, 561 F.3d at 1208; *United States v. Torres,* 573 F.Supp.2d at 942

(finding that failure to provide a defendant with a hearing before requiring him to register

under SORNA after he has been convicted of a sexual offense is not a deprivation of his

right to procedural due process); *see also, e.g., Keleher*, Slip Op. at *10, 2008 WL

5054116 ("Procedural due process does not require that the defendant be given an

opportunity to prove he is not currently dangerous or likely to recidivate, something which is of no consequence to SORNA.").

Just like the Connecticut scheme, SORNA's requirements turn "on an offender's conviction alone–a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Connecticut Dep't of Public Safety*, 538 U.S. at 7. Although the duration of registration and frequency of verification vary with the "tier" level of a convicted sex offender under SORNA, the tier level is not based on any finding of "risk" or "level of current dangerousness," but on the type of conviction alone. 42 U.S.C. §§ 16911, 16915-16. As the Supreme Court has made clear, the government is "not barred by principles of '*procedural* due process' from drawing such classifications." *Connecticut Dep't of Public Safety*, 538 U.S. at 8.

Courts have soundly rejected substantive due process challenges to sex offender registration requirements as well. Under *Washington v. Glucksberg*, 521 U.S. 702, 727(1997), persons who have been convicted of sex offenses do not have a fundamental right to be free from the registration and notification requirements set forth in SORNA. Actions that implicate anything less than a fundamental right require only that the government demonstrate "a reasonable relation to a legitimate state interest to justify the action." *Glucksberg*, 521 U.S. at 722. And as the Supreme Court has already determined in *Smith*, sex offender registration schemes serve "a legitimate nonpunitive purpose of 'public safety, which is advanced by alerting the public to the risk of sex offenders in

their community.'"  538 U.S. at 102-03 (quoting *Doe I v. Otte*, 259 F.3d 979, 991 (9th

Cir. 2001)); *see also Connecticut Dep't of Public Safety*, 538 U.S. at 4 ("Sex offenders

are a serious threat in this Nation.") (internal quotation omitted); *Schall v. Martin*, 467

U.S. 253, 264 (1984); *infra* at 20 (listing cases describing legitimate governmental

interest furthered by SORNA).

### 2.    SORNA Does Not Violate Plaintiff's Right to Travel

Plaintiff next claims that SORNA violates his right to travel "throughout Texas."[10]

Compl. ¶ 85.  As an initial matter, the "right to travel" secured by the United States

Constitution is the right to travel "from one state to another."  *United States v. Benevento*,

Slip Op. at *39, 2009 WL 1111257 (D. Nev. Apr. 21, 2009).  Plaintiff's ability to travel

intrastate, on the other hand, is not a matter of federal constitutional law.

Nevertheless, whether inter- or intrastate travel is at stake in the present case,

SORNA imposes no prohibitions on plaintiff's ability to travel.  Rather, SORNA merely

requires reporting of certain information that may be associated with

travel—requirements that are subject to federal enforcement when circumstances

supporting federal jurisdiction exist.  *See* 42 U.S.C. § 16913(a); 18 U.S.C. § 2250(a).

Weighed against the overwhelming governmental interest in protecting public safety,

---

[10] Plaintiff also asserts in this count of the Complaint that SORNA violates his "right to free association" and to "raise children."  Compl. ¶ 85.  Plaintiff confuses SORNA's notification and registration requirements with local laws or probation requirements regulating sex offenders.  To the extent that Texas requirements go further than SORNA, any such claim lies against the state, not the federal defendants.

these requirements do not burden plaintiff's travel to such an extent that SORNA violates the Constitution. *See, e.g., Ambert*, 561 F.3d at 1210 ("[T]he government's interest in protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden."); *Nam Van Hoang,* 2008 WL 4610249.

### 3.    SORNA Does Not Violate Equal Protection

In the fourth cause of action in the Complaint, plaintiff alleges that SORNA and the Texas sex offender laws "are irrational, and designed only to burden an unpopular group." Compl. ¶ 89.  The Fifth Amendment's protections against arbitrary governmental action are most directly implicated when such action affects a suspect class and strict scrutiny is the standard for the court's constitutional inquiry. *See Benevento*, Slip Op. at *41, 2009 WL 1111257.  Otherwise, there must simply be a rational connection between the statute and a legitimate government interest.

"Sex offenders are not a suspect class." *United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001); *see also Benevento*, Slip Op. at *41, 2009 WL 1111257. Accordingly, the only question is whether there is a legitimate government interest that justifies SORNA's requirements; a question that has been unanimously answered in the affirmative. *See supra* at 20 (listing cases describing legitimate governmental interest furthered by SORNA).

### 4.    The Registration Requirements of SORNA Are Civil, Not Punitive, in Nature

In the fifth and seventh causes of action of the Complaint, plaintiff alleges that SORNA's registration requirements impose punishment on sex offenders that is both cruel and unusual and a violation of double jeopardy. *See* Compl. at 38-40. These allegations, in assuming SORNA to impose retributive punishment on sex offenders, have been rejected by the Supreme Court.

As the Supreme Court has explained, sex offender registration laws are civil, regulatory schemes designed to protect the public, not punish offenders, so that their retroactive application does not offend the Constitution. *Smith v. Doe*, 538 U.S. at 105-06. In *Smith v. Doe*, the Supreme Court rejected an *ex post facto* challenge to Alaska's state registration and notification scheme, which had been adopted after Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071, conditioning "certain federal law enforcement funding on the States' adoption of sex offender registration laws." 538 U.S. at 89. In upholding the Alaska scheme, the Supreme Court observed that the "intent of the Alaska Legislature was to create a civil, nonpunitive regime" and concluded that respondents could not show "by the clearest proof" that the effects of the law negated the intention to create a civil scheme. *Id*. at 96, 105.

The analysis in *Smith v. Doe* applies with equal, if not greater, force here. In SORNA, Congress expressed a clear intent to provide financial incentives for a civil scheme "[i]n order to protect the public from sex offenders and offenders against

children." 42 U.S.C. § 16901. Similar to the findings by the Alaska legislature, Congress

here "[u]ltimately, . . . concluded [in 2006] that the patchwork of standards that had

resulted from piecemeal amendments should be replaced with a comprehensive new set of

standards—the SORNA reforms—that would close potential gaps and loopholes under

the old law, and generally strengthen the nationwide network of sex offender registration

and notification programs." SORNA Guidelines at 4; *see also* Children's Safety Act of

2005, H.R. Rep. 109-218 (I) at 23, 109th Cong., 1st Sess., 2005 WL 2210642. "In this

case," as in *Smith,* "nothing on the face of the statute suggests that the legislature sought

to create anything other than a civil . . . scheme designed to protect the public from

harm." 538 U.S. at 93 (internal citation omitted).

Following *Smith*, courts have consistently recognized the registration requirements

of SORNA, and other sex offender statutes, to be civil in nature. *See Torres,* 573 F.

Supp. 2d at 946; *Reeder,* 2008 WL 4790114 at *8. As no "punishment" is imposed by

SORNA's registration requirements, the statute cannot be said to impose punishment that

is cruel and unusual or a violation of double jeopardy.[11]

### 5. The Registration Requirements of SORNA Do Not Violate Separation of Powers

In the eleventh cause of action in the Complaint, plaintiff argues that SORNA

violates the separation of powers doctrine of the Texas Constitution. Compl. ¶ 114. As

---

[11] To the extent that plaintiff's double jeopardy argument depends on SORNA being applied retroactively to crimes committed before its passage, then the argument suffers from the same standing deficiencies as his other retroactivity arguments. *See supra* at 11-15.

an initial matter, the Supremacy Clause precludes the invalidation of SORNA by a conflicting state law. *See, e.g., Blum v. Bacon*, 457 U.S. 132, 145-56 (1986). In any case, any challenge to SORNA-compliant schemes under state law would be unripe due to contingencies set forth in the statute itself, which provides states with the opportunity to adopt alternative measures if any state provisions are deemed unconstitutional under state law. 42 U.S.C. § 16925(b)(1)-(3).

Nevertheless, the basis for plaintiff's claim lacks merit. Plaintiff argues that SORNA "limits the judicial power of sentence finality" and "reverses final court judgments." Compl. ¶ 114. This argument assumes that SORNA applied retroactively to plaintiff's sentence. However, plaintiff concedes that he was convicted of a sexual offense in 2007, *after* the passage of SORNA. Compl. ¶ 3. Therefore, there is no possibility that SORNA's registration requirements retroactively disturbed the sentence imposed by the district court.[12]

## 6.    18 U.S.C. § 2250 Does Not Violate the Commerce Clause

Plaintiff's final challenge to the constitutionality of SORNA asserts that the criminal enforcement provision of SORNA, codified at 18 U.S.C. § 2250, violates the commerce clause. Compl. at 11-17. Because plaintiff has not alleged that he has been threatened with criminal prosecution pursuant to this provision, it is highly questionable

---

[12] The plaintiff, in document number 9 on the docket, explains that the district court included the requirement that he register as a sex offender as part of his terms of supervised release.

whether he has standing to challenge it.  *See, e.g., San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127-28 (9th Cir. 1996).  In any event, plaintiff's claim lacks merit.

Section 2250(a) of Title 18 imposes criminal liability on a sex offender who knowingly fails to register or update a registration despite being required to do so by SORNA, and either was convicted of a federal[13] offense requiring registration or traveled in interstate or foreign commerce.  Thus, there are two general bases for jurisdiction under this provision.  The first is a federal conviction.  18 U.S.C. § 2250(a)(2)(A).  The second is interstate travel.  *Id.* § 2250(a)(2)(B).  Challenges to the constitutionality of section 2250 under the commerce clause typically arise in the context of the second provision concerning interstate travel.  *See, e.g., Ambert*, 561 F.3d at 1210.  Some of these, albeit a minute number of outliers, have proven successful in district court.  *See, e.g., United States v. Waybright*, 561 F. Supp. 2d 1154, 1162 (D. Mont. 2008).

The same cannot be said for commerce clause challenges to prosecutions pursuant to the first provision, i.e. individuals convicted of a sexual offense under federal law.  As these courts have explained, "[D]efendants indicted under § 2250(a)(2)(A) are held accountable for violations of federal—not state—law, which falls squarely within Congress' exclusive jurisdiction.  As state laws are not implicated, Congress' Commerce Clause authority, granting Congress the power 'to regulate Commerce . . . among the several States' does not represent the underlying principle through which Congress

_____

[13] Section 2250(a)(2)(A) also applies to convictions under the law of the District of Columbia, tribal law, or the law of a possession or territory.

**Federal Defendants' Motion to Dismiss and Brief in Support Thereof - Page 28**

drafted § 2250(a)(2)(A) . . . ." *United States v. Santana*, 584 F. Supp. 2d 941, 946-47

(W.D. Tex. 2008) (citation omitted); *see also Torres,* 573 F.Supp.2d at 935; *United States*

*v. Thompson*, 595 F. Supp. 2d 143, 146 (D. Maine 2009) (quoting *Santana* and collecting

cases in the SORNA context).

　　　　As plaintiff alleges that his obligations under SORNA arise as a result of his

conviction for a federal sex crime, rather than a state conviction, the federal government

has unquestioned authority to impose requirements on him as a byproduct of his federal

conviction.  Accordingly, his commerce clause argument is misguided and meritless.

## IV. <u>CONCLUSION</u>

For the reasons set forth above the Court should dismiss plaintiff's claims against

the federal defendants with prejudice.

Respectfully submitted,

JAMES T. JACKS
Acting United States Attorney


_____/s/ *ANN C. ROBERTS*_____
ANN C. ROBERTS
Assistant United States Attorney
Texas State Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Tel:   806.472.7397
Fax:   806.472.7324
Email: ann.roberts@usdoj.gov

Attorneys for the United States

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned is unable to confer with Petitioner as he is incarcerated at the FCI

Seagoville, in Seagoville, Texas, therefore, this motion is deemed opposed.


_____/s/ *ANN C. ROBERTS*_____
ANN C. ROBERTS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the  15th  day of  June  2009, I electronically filed the

foregoing document with the clerk of court for the United States District Court for the

Northern District of Texas using the electronic case filing system of the court.  The

electronic case filing system sent a "Notice of Electronic Filing" to the following attorney

of record:

William F. Glazer                                    Tammy Jean Ardolf
Garland City Attorney's Office                       Dallas County Criminal District Attorney's Ofc.-Fed
200 N. Fifth Street, 4th Floor                       133 N. Industrial Blvd, LB 19
P.O. Box 469002                                      Dallas, Texas 75207
Garland, Texas 75202-9002                            via email: tjardolf@dallascounty.org
via email: wglazer@ci.garland.tx.us                  (Attorney for Defendant Lupe Valdez)
(Attorney for Defendant Mitch Bates)


A copy of the foregoing document is being served by United States Postal Service on the
following pro se party:

Ronald C. Pearson, Pro Se Plaintiff
Reg. No. 36037-177
FCI Seagoville
P.O. Box 9000
Seagoville, Texas 75159-9000


                                            /s/ ANN C. ROBERTS
                                         ANN C. ROBERTS
                                         Assistant United States Attorney

*Federal Defendants' Motion to Dismiss and Brief in Support Thereof - Page 31*